## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number 2009-NMSC-014

Filing Date:   March 31, 2009

Docket No. 30,663

STATE OF NEW MEXICO,

     Plaintiff-Respondent,

v.

RICH HUBBLE,

     Defendant-Petitioner

ORIGINAL PROCEEDING ON CERTIORARI
Sandra A. Price, District Judge

Hugh W. Dangler, Chief Public Defender
Nancy M. Hewitt, Appellate Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Gary K. King, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Respondent

Donna M. Bevacqua-Young
John Ward Wheeler, II
Santa Fe, NM

for Amici Curiae
New Mexico District Attorneys' Association and
New Mexico Department of Public Safety

1

**SERNA, Justice.**

**{1}**     Defendant Rich Hubble was convicted in magistrate court of Driving Under The Influence of Intoxicating Liquor, contrary to NMSA 1978, Section 66-8-102 (1953, as amended through 2004), and Improper Turning at Intersection, contrary to NMSA 1978, Section 66-7-325(A) (1978).  Pursuant to Rule 6-703 NMRA, he appealed to the district court.  During the district court bench trial, Defendant moved to suppress the evidence that was obtained from the traffic stop, which he claimed was conducted without reasonable suspicion.  The district court denied the motion and Defendant was once again convicted of the same two offenses.  Defendant appealed the district court's judgment and the Court of Appeals affirmed.  We granted Defendant's petition for writ of certiorari on the issue of whether the initial traffic stop was based upon reasonable suspicion that he violated a traffic law.  We hold that the traffic stop was based upon reasonable suspicion and we affirm the denial of Defendant's motion to suppress.

## I.     BACKGROUND

**{2}**     On the evening of February 15, 2005, Deputy Phillip Francisco was driving southbound on County Road 6100 when he observed Defendant's vehicle come to a stop at a "T" intersection between County Road 6100 and an unnamed access road.  Aside from the vehicles belonging to Deputy Francisco and Defendant, there were no other vehicles on either the county road or the access road.  As Deputy Francisco passed through the intersection, he observed that Defendant did not have his turn signal engaged.  Deputy Francisco continued to observe the vehicle through his rearview mirror as he proceeded southbound and never saw the turn signal engaged.  Deputy Francisco then observed Defendant turn onto County Road 6100 without using his turn signal.  Defendant and his passenger both testified that Defendant did turn on his signal before turning right onto Country Road 6100.  Deputy Francisco pulled over to the side of the road about one hundred feet past the intersection and waited for Defendant to pass him.  Deputy Francisco then proceeded to make the traffic stop on the basis that Defendant turned without using his signal.

**{3}**     Deputy Francisco approached the vehicle and detected the odor of alcohol on Defendant's breath and observed that Defendant had bloodshot, watery eyes and slurred speech.  Deputy Francisco also observed Defendant act in a slow, impaired, and disoriented manner when he was retrieving his license and registration.  Deputy Francisco ordered Defendant to exit his vehicle and observed Defendant swaying and losing his balance when standing.  Deputy Francisco asked Defendant if he had been drinking and Defendant responded by saying that he had consumed one beer.  Deputy Francisco then had Defendant undergo the horizontal gaze nystagmus, the walk-and-turn, and the one-leg stand tests.  Defendant failed all three tests and Deputy Francisco placed him under arrest.  Defendant consented to two breath tests and the results indicated that he had a blood alcohol content

of 0.12 and 0.10, respectively. Deputy Francisco issued Defendant a citation for DWI and for Improper Turning at Intersection.

**{4}** At trial, Deputy Francisco acknowledged that the turn signal statute dictates that a driver use the turn signal in order to indicate to other traffic in which direction the driver intends to travel. Deputy Francisco testified that he considered himself to be traffic that night.

## II.    DISCUSSION

### A.    Standard of Review

**{5}** "In reviewing a trial court's denial of a motion to suppress, we observe the distinction between factual determinations which are subject to a substantial evidence standard of review and application of law to the facts[,] which is subject to de novo review." *State v. Nieto*, 2000-NMSC-031, ¶ 19, 129 N.M. 688, 12 P.3d 442 (internal quotation marks and citation omitted). "We view the facts in the manner most favorable to the prevailing party and defer to the district court's findings of fact if substantial evidence exists to support those findings." *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. "Questions of reasonable suspicion are reviewed de novo by looking at the totality of the circumstances to determine whether the detention was justified." *State v. Robbs*, 2006-NMCA-061, ¶ 9, 139 N.M. 569, 136 P.3d 570.

**{6}** Defendant did not assert that the New Mexico Constitution afforded him greater protection than the federal Constitution, so we only address the issue of reasonable suspicion under federal Fourth Amendment law. *See State v. Gomez*, 1997-NMSC-006, ¶¶ 22-23, 122 N.M. 777, 932 P.2d 1.

**{7}** "Both the United State Constitution and the New Mexico Constitution protect a citizen against unreasonable searches and seizures." *State v. Funderburg*, 2008-NMSC-026, ¶ 12, 144 N.M. 37, 183 P.3d 922. Since an automobile stop is considered a "seizure" under the Fourth and Fourteenth Amendments, it must "be conducted in a reasonable manner to satisfy the Fourth Amendment." *State v. Duran*, 2005-NMSC-034, ¶ 22, 138 N.M. 414, 120 P.3d 836. "Before a police officer makes a traffic stop, he must have a reasonable suspicion of illegal activity." *State v. Anaya*, 2008-NMCA-020, ¶ 6, 143 N.M. 431, 176 P.3d 1163. We analyze the reasonableness of a stop in accordance with the two-part test set forth in *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968): (1) whether the stop was justified at its inception and (2) whether the officer's action was "reasonably related in scope to the circumstances which justified the interference." *Funderburg*, 2008-NMSC-026, ¶ 13. Because there are no allegations that Deputy Francisco exceeded the scope of the initial interference, we need only examine the first part of the test—whether the stop was justified at its inception.

**{8}** "A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *State v.*

3

*Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856. "The test is an objective one. The subjective belief of the officer does not in itself affect the validity of the stop; it is the evidence known to the officer that counts, not the officer's view of the governing law." *State v. Muñoz*, 1998-NMCA-140, ¶ 9, 125 N.M. 765, 965 P.2d 349. We objectively examine whether the facts available to the officer warrant the officer, as a person of reasonable caution, to believe the action taken was appropriate. *State v. Madsen*, 2000-NMCA-050, ¶ 9, 129 N.M. 251, 5 P.3d 573. We will find reasonable suspicion "if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *State v. Taylor*, 1999-NMCA-022, ¶ 7, 126 N.M. 569, 973 P.2d 246 (internal quotation marks and citation omitted).

**B.      Section 66-7-325(A) Requires Engagement of a Turn Signal When There is a Reasonable Possibility That Other Traffic May Be Affected**

**{9}**      The determination of whether Deputy Francisco had reasonable suspicion to make the traffic stop does not hinge on whether Defendant actually violated the underlying turn signal statute. *See State v. Brennan*, 1998-NMCA-176, ¶ 12, 126 N.M. 389, 970 P.2d 161 (holding that, regardless of whether the defendant was ultimately convicted of careless driving, the officer had reasonable suspicion that he was driving carelessly and the stop was therefore justified). For clarity, we nonetheless take this opportunity to discuss Section 66-7-325(A) and review Defendant's Improper Turning at Intersection conviction.

**{10}**      "The primary goal in interpreting a statute is to give effect to the Legislature's intent;" we first look at the words chosen by the Legislature and the plain meaning of those words. *State v. Davis*, 2003-NMSC-022, ¶ 6, 134 N.M. 172, 74 P.3d 1064. Under the plain meaning rule, when a statute's language is "clear and unambiguous," we will give effect to the language and refrain from further statutory interpretation. *State v. Rivera*, 2004-NMSC-001, ¶ 10, 134 N.M. 768, 82 P.3d 939. We will not read into a statute language which is not there, especially when it makes sense as it is written. *Burroughs v. Bd. of County Comm'rs of Bernalillo County*, 88 N.M. 303, 306, 540 P.2d 233, 236 (1975).

**{11}**      Section 66-7-325(A) provides in pertinent part: "No person shall . . . turn any vehicle without giving an appropriate signal . . . in the event any other traffic may be affected by such movement." Thus, there are two elements in the statute that must be satisfied in order for its mandate to be triggered: (1) there must be other "traffic" (2) that "may be affected" by the motorist's turn.

**{12}**      The "traffic" element is easily interpreted and any questions regarding its application in this case are easily resolved given the factual scenario. In interpreting the "traffic" element, we look to how the word is defined in our Motor Vehicle Code: "pedestrians, ridden or herded animals, vehicles and other conveyances either singly or together using any highway for purposes of travel." NMSA 1978, § 66-1-4.17(F) (1990, as amended through 2007). Thus, there is no doubt that Deputy Francisco, who was driving a vehicle on a

4

highway, was "traffic" under Section 66-7-325(A). The more contentious question deals with the "may be affected" element.

**{13}** We first look to the plain meaning of the words chosen by the Legislature and in particular, the word "may." Black's Law Dictionary defines "may" as "[t]o be a possibility." *Black's Law Dictionary* 1000 (8th ed. 2004). Webster's Dictionary defines it as "[u]sed to indicate a certain measure of likelihood or possibility." *Webster's II: New Riverside University Dictionary* 734 (1988). Thus, the concept of "possibility" is common to both definitions. To this end, it is significant that the Legislature chose the phrase "may be affected" as opposed to "is affected," "will be affected," or "most likely will be affected." We understand this to mean that the Legislature's intent was to provide Section 66-7-325(A) with a broad reach, requiring a signal even when there is only a reasonable possibility that other traffic may be affected by the signaling driver's movement. Thus, under the plain meaning rule, we read the phrase "may be affected" to mean when there is a *reasonable possibility* that other traffic may be affected.

**{14}** This interpretation of Section 66-7-325(A) aligns with the policy and concerns that the New Mexico Motor Vehicle Division expressed in the *New Mexico Driver Manual*. *See* Motor Vehicle Div., New Mexico Taxation & Revenue Dep't, *New Mexico Driver Manual* 19 (2004) [hereinafter New Mexico Driver Manual]. In the section titled "Letting Others Know What You Are Doing," the manual states: "Generally other drivers expect you to keep doing what you are doing. You must warn them when you are going to change direction or slow down. This will give them time to react if needed, or at least not be surprised by what you do." *Id.* The manual further instructs drivers to signal when they change direction, turn right or left, merge into traffic, or park so that other drivers will have time to react to such movements. *Id.* Thus, requiring motorists to signal before they turn when there is a reasonable possibility that other traffic may be affected by such a turn not only reduces the chance that other drivers would be surprised, but also increases the time that other drivers have to react to such movements.

**{15}** Given this interpretation, we now turn to the application of Section 66-7-325(A) to the facts of this case. In their arguments regarding whether Deputy Francisco was "other traffic [that] may be affected" under the meaning of the statute, the parties advocated for different snapshots of time from which this issue should be analyzed. Defendant argued that the issue be determined by analyzing Deputy Francisco at the point in time when he had already passed through the intersection and pulled over to the side of the road. Conversely, the State argued for an extended period of time—the time from when Deputy Francisco was approaching the intersection, including the time he passed through the intersection, until the time he pulled over onto the side of the road.

**{16}** In holding that Deputy Francisco was not traffic that may have been affected by Defendant's turn, the Court of Appeals endorsed the Defendant's proposed snapshot in time: "[t]he State has not directed our attention to any evidence that Deputy Francisco believed that Defendant's right turn itself presented a potential hazard to him (the only traffic present)

5

*as he observed the turn in his rearview mirror from 100 feet down the road . . . ."* *State v. Hubble*, No. 26,452, slip. op. at 3 (N.M. Ct. App. Sept. 10, 2007) (emphasis added).

**{17}** Given our interpretation that Section 66-7-325(A) requires a motorist to give the appropriate signal when there is a reasonable possibility that other traffic may be affected by a turn, we believe that the time period during which there was such a possibility that Deputy Francisco may have been affected by Defendant's turn encompassed the time that Deputy Francisco was approaching and passing through the intersection. The broad reach and underlying policy of Section 66-7-325(A) dictate that the effect that one driver's movement may have on another driver is not confined to the point in time when the actual, physical movement occurs. Rather, the effect also involves a driver's decision-making process in the time leading up to the movement. A driver, once given a visual cue that indicates another driver's intention, may decide to switch lanes, slow down, or prepare for a change in direction. When a driver engages his or her turn signal, it also communicates to other motorists that the driver is aware of their presence on the road. Thus, to consider that other traffic may be affected only at the time of the actual, physical movement unduly limits the broad reach of 66-7-325(A) and undermines our policy of giving drivers ample time to react to the future movements of other drivers on the road. *See* New Mexico Driver Manual at 19.

**{18}** Further, subsection (B) of the statute reinforces the notion that the time period before the actual, physical movement of a driver is pertinent to the determination of Section 66-7-325 violations. It provides: "[a] signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning." Section 66-7-325(B). Thus, because we have determined that Deputy Francisco was "other traffic [that] may [have been] affected," Defendant should have engaged his right turn signal at least one hundred feet before the intersection. Such indication would have alerted Deputy Francisco as to Defendant's intention before Deputy Francisco reached the intersection.

**{19}** The Court of Appeals also unreasonably narrowed the reach of Section 66-7-325(A) when it deviated from the language of the statute in its analysis. The first such deviation was when the Court articulated the issue that it would discuss: "we must decide whether Deputy Francisco *could have been affected* by Defendant's turn within the meaning of Section 66-7-325(A)." *Hubble*, No. 26,452, slip. op. at 2 (emphasis added). Later, the Court reasoned, "[w]e do not understand how Deputy Francisco's operation of his vehicle *was affected* in any normal sense of this word by a right turn that occurred after he was well clear of the intersection." *Id.* at 3 (emphasis added). Finally, the Court stated, "[t]he State has not directed our attention to any evidence that Deputy Francisco believed that Defendant's right turn itself *presented a potential hazard* to him . . . ." *Id.* (emphasis added).

**{20}** Given our interpretation of Section 66-7-325(A) and its underlying policy, it is clear that the Court of Appeals required a greater show of effect than the statute contemplates.

6

The State was not required to prove that Deputy Francisco *could have* been affected, that he *was* affected, or that Defendant's turn *presented a potential hazard*; the statute only requires that the surrounding facts establish that there was a *reasonable possibility* that he may have been affected. To require an actual effect or a potential hazard would undermine the policy behind driving safety by depriving non-signaling drivers of visual cues and ample decision-making time in their interactions with drivers who intend to change directions. We therefore conclude that Defendant violated Section 66-7-325(A) and affirm Defendant's turn signal violation conviction. We now turn our discussion to reasonable suspicion.

## C. Mistakes of Fact and Law and Reasonable Suspicion

**{21}** Defendant argues that the traffic stop was not supported by reasonable suspicion because Deputy Francisco made a mistake of law when he concluded that Defendant violated the traffic code. As we have already discussed, we agree with the district court that Defendant violated Section 66-7-325(A) and therefore Deputy Francisco did not make a mistake of any kind. However, in order to clarify the law regarding reasonable suspicion, we take this opportunity to discuss mistakes of law and mistakes of fact and how they interact with reasonable suspicion.

**{22}** A mistake of law is a "mistake about the legal effect of a known fact or situation," whereas a mistake of fact is a "mistake about a fact that is material to a transaction; any mistake other than a mistake of law." *Black's Law Dictionary* 1023. Although mistakes of law and fact are more frequently encountered in the context of criminal defenses, some jurisdictions have incorporated these concepts into their rules regarding reasonable suspicion. *See, e.g.*, *United States v. Valadez-Valadez*, 525 F.3d 987, 991 (10th Cir. 2008) ("[F]ailure to understand the plain and unambiguous law . . . is not objectively reasonable." (internal quotation marks and citation omitted)); *United States v. Coplin*, 463 F.3d 96, 101 (1st Cir. 2006) ("Stops premised on a mistake of law, even a reasonable, good-faith mistake, are generally held to be unconstitutional."); *United States v. Chanthasouxat*, 342 F.3d 1271, 1276 (11th Cir. 2003) (reasoning that, while an officer's mistake of fact may provide the objective grounds for reasonable suspicion, an officer's mistake of law cannot); *People v. Ramirez*, 44 Cal. Rptr. 3d 813, 816 (Cal. Ct. App. 2006) ("[A] suspicion founded on a mistake of law cannot constitute the reasonable basis required for a lawful traffic stop.")

### 1. *State v. Anaya*

**{23}** Reasonable suspicion in New Mexico is analyzed with the use of an objective test. In *State v. Anaya*, our Court of Appeals held that "conduct premised totally on a mistake of law cannot create the reasonable suspicion needed to make a traffic stop; but if the facts articulated by the officer support reasonable suspicion on another basis, the stop can be upheld." *Anaya*, 2008-NMCA-020, ¶ 15.

**{24}** The facts in *Anaya* are similar to the instant case. The defendant in *Anaya* was observed to be weaving within his lane of traffic and was later stopped by a police officer

after he failed to utilize his turn signal. *Id.* ¶ 2. After approaching the car and observing signs of intoxication, the officer arrested the defendant for DWI. *Id.* The defendant moved to suppress the DWI evidence on the basis that the initial stop was invalid because it was not supported by reasonable suspicion. *Id.* ¶ 3. At the suppression hearing, the officer testified that he did not observe any other cars in the area at the time of the stop and that he understood that the turn signal statute required the use of a turn signal in all circumstances. *Id.* Additionally, the officer did not testify that he was affected by the defendant's right turn. *Id.* The district court found that the defendant's traffic stop was not supported by reasonable suspicion and granted the motion to suppress the DWI evidence. *Id.* ¶ 4.

**{25}** In affirming the district court's decision to suppress the evidence, the *Anaya* Court found that, although "there could be cases in which the officer's vehicle could be considered affected traffic, depending on the evidence presented[,] . . . the facts as articulated by the officer do not support violation of the turn signal law." *Id.* ¶ 19. The Court also stated that "[f]ailure to signal is not a per se traffic violation, despite [the] officer's good-faith understanding to the contrary," and also classified the officer's mistake as a mistake of law. *Id.* ¶ 17. Viewing the evidence in the light most favorable to the defendant, the Court agreed with the district court's finding that "the officer's vehicle was not traffic that could be affected by [the] [d]efendant's failure to signal." *Id.* ¶ 19.

### 2.   *Anaya* Does Not Conflict With Our Objective Reasonable Suspicion Test

**{26}** The State argues that *Anaya* conflicts with our existing caselaw that has consistently applied an objective approach to analyzing reasonable suspicion. We disagree.

**{27}** In its answer brief, the State asserted that "[t]he *Anaya* Court incorrectly states that New Mexico caselaw holds that conduct premised totally on a mistake of law cannot create the reasonable suspicion needed to make a traffic stop." However, in making this assertion, the State ignored the second part of *Anaya*'s holding: "but if the facts articulated by the officer support reasonable suspicion on another basis, the stop can be upheld." *Id.* ¶ 15. This second part is critical because it establishes that a court's analysis has not been completed once an officer's conduct has been categorized as a mistake of law—courts will still analyze the facts surrounding the officer's decision in order to determine whether the officer had reasonable suspicion on another basis. In essence, the second part of the *Anaya* proposition is our objective test for reasonable suspicion.

**{28}** Even with the "mistake of law" language of the first part of *Anaya* proposition, our objective test set forth in *Brennan* and *Muñoz* remains unaffected because it does not hinge on a court's classification of an officer's mistake as either a mistake of law or a mistake of fact. *See Brennan*, 1998-NMCA-176, ¶ 10 ("[T]he question is whether there were facts available to [the officer] that would warrant a person of reasonable caution to believe the stop was appropriate."); *Muñoz*, 1998-NMCA-140, ¶ 9 ("The test [for reasonable suspicion] is an objective one. The subjective belief of the officer does not in itself affect the validity of the stop; it is the evidence known to the officer that counts . . . ."). In other words, it is

not fatal in terms of reasonable suspicion if an officer makes a mistake of law when he conducts a traffic stop; courts will still look objectively to the totality of the circumstances surrounding the officer's decision to conduct the traffic stop in order to determine if he or she had reasonable suspicion.

**{29}** This was the Court of Appeals' process in *Anaya*. It determined that the officer in that case made a mistake of law because he believed that the turn signal statute required drivers to engage their turn signal at all times, no matter if there was other traffic that may have been affected or not. *Anaya*, 2008-NMCA-020, ¶ 17. However, the inquiry did not end with this determination. The Court of Appeals still had to determine, despite the officer's misunderstanding of the law, if there were other facts surrounding the officer's decision to conduct the traffic stop that could provide the objective grounds for reasonable suspicion. *Id.* ("[T]here [were] no other facts or testimony . . . to support reasonable suspicion on other grounds."). The Court further held that "[i]t cannot be objectively reasonable to stop a vehicle *when there are no facts to support the inference that a law has been violated*." *Id.* ¶ 20 (emphasis added). Thus, the Court analyzed the *facts* surrounding the officer's decision and did not merely conclude that there was no reasonable suspicion upon its determination that the officer had made a mistake of law.

### 3. This is Not a Mistake of Law Case

**{30}** In an attempt to apply the proposition set forth in *Anaya*, Defendant argues that Deputy Francisco made a mistake of law when he conducted the traffic stop of Defendant based on a perceived violation of the turn signal statute and that this mistake was the sole basis for the stop. We disagree.

**{31}** Primarily, as discussed above, we hold that Defendant violated the turn signal statute and thus, Deputy Francisco did not make a mistake either of fact or of law when he conducted the traffic stop of Defendant. Thus, the mistake of law portion of the *Anaya* proposition does not apply. Also, unlike the officer in *Anaya*, who testified that he "understood Section 66-7-325 to require the use of a turn signal in all circumstances," *id.* ¶ 3, there is no evidence in the record before us that Deputy Francisco had any such misunderstanding of the breadth of Section 66-7-325(A).

**{32}** Finally, even if Deputy Francisco was mistaken when he believed that Defendant had violated the turn signal statute, such a mistake would be a mistake of *fact*, not a mistake of law. Deputy Francisco's determinations—that he, while driving his vehicle on the highway, was "traffic," and that he "may [have been] affected" by Defendant's turn—concerned "fact[s] that [were] material to [the] transaction." *See Black's Law Dictionary* 1023. Deputy Francisco made no mistake about the applicable rules of law relating to the mandatory use of turn signal. Instead, he had to determine whether certain *facts*—the relative positions of the vehicles and their direction of travel—constituted a scenario where he may have been affected by Defendant's movement. Thus, any mistakes regarding these factual judgments would be classified as mistakes of fact and not mistakes of law.

**4.** **Reasonable Suspicion Analysis**

**{33}** Given our interpretation of Section 66-7-325(A) and our holding that Defendant violated the statute, we now address the reasonable suspicion inquiry to the facts of this case.

**{34}** Viewing the facts in the light most favorable to the State, we hold that Deputy Francisco had reasonable suspicion to stop Defendant. Deputy Francisco testified that as he passed through the intersection, he observed Defendant approach the same intersection perpendicularly and come to a stop. Deputy Francisco observed that Defendant did not have his turn signal engaged at that time. Deputy Francisco further testified that Defendant never, at any time, had his turn signal engaged as Deputy Francisco drove through the intersection and pulled over to the side of the road.

**{35}** Looking at the "totality of the circumstances" and through an objective lens, we hold that Deputy Francisco had a "particularized suspicion . . . that [Defendant] [was] breaking, or [had] broken[] the law." *See Jason L.*, 2000-NMSC-018, ¶ 20. The "specific articulable" facts that Deputy Francisco observed would lead a reasonable officer to believe that Defendant had violated the turn signal statute and they created the objective basis for Deputy Francisco's reasonable suspicion. Thus, Deputy Francisco's traffic stop of Defendant was based upon reasonable suspicion.

**III.** **CONCLUSION**

**{36}** We hold that Defendant violated Section 66-7-325(A) and that Deputy Francisco had reasonable suspicion to conduct the traffic stop of Defendant. The district court's denial of Defendant's motion to suppress and his convictions are hereby affirmed.

**{37}** **IT IS SO ORDERED**.

 

 

**PATRICIO M. SERNA, Justice**

**WE CONCUR:**

**EDWARD L. CHÁVEZ, Chief Justice**

**PETRA JIMENEZ MAES, Justice**

10

**RICHARD C. BOSSON, Justice**

_____

**CHARLES W. DANIELS, Justice**

**Topic Index for _State v. Hubble_, No. 30,663**

**CT**            **CONSTITUTIONAL LAW**
CT-SU         Suppression of Evidence


**CA**            **CRIMINAL PROCEDURE**
CA-RS         Reasonable Suspicion
CA-SZ         Search and Seizure