IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMCA-028

Filing Date: June 16, 2011

Docket No. 29,733

MR. and MRS. RON GLASER,
THERESA CULL, CHERYL HOST,
EDMUND AUERBACH, DR. and
MRS. DAVIS SPENCE, DONALD R. ASHER,
HEIDI LARSEN, BRAD LEONARD, TED THRASHER,
ANNE DANIELS, BRYAN and LISALEE GOSS,
WILLIAM W. MERSHON, KEITH and
DEBORAH HILLEGOND, and
MR. and MRS. BRUCE CHARNLEY,

        Plaintiffs-Appellants,

v.

JAMES L. LEBUS, DANIEL E. RAKES,
CHARLES VERRY, ALAN G. YOUNG,
STEVEN R. OLIVER, THE NEW MEXICO
FINANCE AUTHORITY, AUI, Inc.,
ANGEL FIRE RESORT OPERATIONS, LLC,
and THE VILLAGE OF ANGEL FIRE,

        Defendants-Appellees.

APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY
John M. Paternoster, District Judge

Armstrong & Armstrong, P.C.
Julia Lacy Armstrong
Roy L. Armstrong
Taos, NM

for Appellants

Stelzner, Winter, Warburton, Flores, Sanchez & Dawes, P.A.
Nann M. Winter
Albuquerque, NM

1

for Appellees LeBus, Rakes, Verry, Young, Oliver
and Angel Fire Public Improvement District Board Members

Sutin, Thayer & Browne, P.C.
Mark Chaiken
Albuquerque, NM

for Appellee New Mexico Finance Authority

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Alan Hall
Albuquerque, NM

for Appellee Angel Fire Resort Operations, LLC

Canepa & Vidal, P.A.
Joseph Canepa
Santa Fe, NM

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Peter Franklin
Santa Fe, NM

for Appellee Village of Angel Fire

**OPINION**

**WECHSLER, Judge.**

{1}     In this appeal, we consider whether (1) a formation election under the Public Improvement District Act (PID Act), NMSA 1978, §§ 5-11-1 to -27 (2001, as amended through 2009), incorporates the election contest and recount procedures found in the Election Code, NMSA 1978, §§ 1-1-1 to 1-24-4 (1969, as amended through 2010), and (2) Plaintiffs' amended complaint constituted an election contest subject to the Election Code's election contest procedures.  We hold that the PID Act's formation election provisions incorporated the Election Code's election contest procedures and that the entirety of Plaintiffs' amended complaint constituted an election contest.  Because an election contest requires direct appeal to our Supreme Court, this Court lacks jurisdiction, and we therefore transfer this case to our Supreme Court.

**BACKGROUND**

{2}     This case arises out of the efforts of Defendants to create a public improvement district within the Village of Angel Fire under the PID Act.  Plaintiffs appeal the district

court's order of dismissal, pursuant to Rule 1-012(B)(1) NMRA, concluding that it lacked subject matter jurisdiction, because the entirety of the amended complaint was subject to and barred by the thirty-day statute of limitations found in the Election Code's election contest provisions, Section 1-14-3, or the thirty-day statute of limitations found in the Municipal Election Code, NMSA 1978, § 3-8-63(C) (1999).

{3}    We summarize the facts in the amended complaint as follows. In April 2007, Defendant Angel Fire Resort Operations, LLC (the Resort) submitted a petition to Defendant Village of Angel Fire (the Village) for approval of a public improvement district to construct roads, water, a force main sewer system, and telephone and electrical utilities to serve 847 lots. The infrastructure improvements were to be funded by a special levy assessed against the property owners of the lots. The Resort resubmitted the petition on October 12, 2007, and included a general plan, a feasibility study, an estimate of construction costs, a rate and method of apportionment of a special levy, and other documents in support of the plan. The Village subsequently mailed a notice of intent to form a public improvement district to lot owners affected by the plan. Following a public hearing, the Village council voted to approve the formation of the Angel Fire Public Improvement District (the AFPID) on February 14, 2008. The Village, the Resort, Defendant Association of Angel Fire Property Owners, and the AFPID executed a contingency agreement that allocated responsibility for construction, financing, ownership, maintenance, and operation of the AFPID plan. The agreement was contingent upon the formation of the AFPID through a formation election as required by Section 5-11-8(A) of the PID Act.

{4}    On April 1, 2008, the Village mailed ballots to the property owners affected by the proposed AFPID. The ballots were to be returned by April 21, 2008, the returned ballots were counted, and the requisite majority approved the AFPID. Upon approval of the formation of the AFPID, the board of directors of the AFPID (the Board) passed a resolution authorizing a special levy upon the properties located within the AFPID. On November 1, 2008, the Village mailed property tax assessments, including the special levy, to property owners within the AFPID. The Board subsequently entered into various contracts to finance and construct the infrastructure improvements, including two loans from Defendant New Mexico Finance Authority.

{5}    Plaintiffs filed a complaint for declaratory relief on June 1, 2009, more than twelve months after the formation election. Plaintiffs filed an amended complaint on June 19, 2009. Plaintiffs' amended complaint sought declarations that (1) the AFPID has no valid legal existence and all contracts and agreements made by the Board are void and unenforceable; (2) if the AFPID was formed in accordance with the law, it is illegal pursuant to Section 5-11-8(B), because the improvements for which the levy is assessed will not confer a benefit upon the property contained within the AFPID and because it will not confer a benefit upon the properties assessed the levy; (3) the properties included in the 1995 reorganization plan are entitled to form a special assessment district; and (4) the AFPID has no authority to collect any tax or assessment or to expend such sums already collected. The district court characterized the entirety of the amended complaint as an election contest and dismissed the

action as untimely under the thirty-day statute of limitations for election contests in the Election Code. This appeal followed.

**ARGUMENTS ON APPEAL**

**{6}** On appeal, Plaintiffs contend that (1) the PID Act's formation election provisions did not incorporate the Election Code's election contest procedures and therefore the thirty-day statute of limitations for election contests does not apply; and (2) even assuming that the Election Code's election contest procedures apply to formation elections, the amended complaint does not present an election contest. In particular, Plaintiffs maintain that the amended complaint does not present an election contest because it does not challenge the results of the election and instead (1) challenges the underlying validity of the petition under the PID Act and the New Mexico Constitution's elections clause, (2) claims that no election occurred for the imposition of the special levy, (3) claims that the special levies are excessive under the PID Act, Section 5-11-8(B), and (4) claims that certain property owners within the AFPID have a right under the Resort's 1995 bankruptcy reorganization plan to form a special assessment district. Defendants, on the other hand, argue that the Election Code requires direct appeal of election contests to our Supreme Court, and therefore this Court does not have jurisdiction.

**STANDARD OF REVIEW**

**{7}** On appeal from a dismissal based on a Rule 1-012 (B)(1) motion, we accept all facts alleged in the complaint as true and resolve all doubt about the sufficiency of the complaint in favor of the plaintiffs' right to proceed. *See Martinez v. Cornejo*, 2009-NMCA-011, ¶ 6, 146 N.M. 223, 208 P.3d 443. The issues of whether the election contest provisions of the Election Code or the Municipal Election Code apply to formation elections under the PID Act and whether Plaintiffs' claims constitute an election contest are legal questions that we review de novo. *See id.* (holding that determining whether the plaintiffs had an actionable claim required statutory construction, which is a question of law reviewed de novo).

**ELECTION CODE'S ELECTION CONTEST PROCEDURES**

**{8}** The district court dismissed the amended complaint as time barred by the thirty-day statute of limitations provided by Section 1-14-3 of the Election Code. This statute of limitations and other provisions found in the Election Code's election contest procedures provide for the "speedy resolution" of election contests. *See Gunaji v. Macias*, 2001-NMSC-028, ¶ 26, 130 N.M. 734, 31 P.3d 1008 (noting that the purpose of the procedures relating to election contests is the speedy resolution of election contests in which the normal rules of civil procedure take too much time).

**{9}** Plaintiffs argue that the district court erred when it determined that the Election Code's election contest procedures, including the thirty-day statute of limitations found in Section 1-14-3, applied to formation elections under the PID Act. The question of whether the PID Act incorporates the Election Code's election contest procedures for formation elections is primarily a question of legislative intent.

4

{10}     The Election Code provides that in "[a]ny action to contest an election[, the] complaint shall be filed no later than thirty days from issuance of the certificate of nomination or issuance of the certificate of election to the successful candidate." Section 1-14-3. Although this provision principally addresses elections with "candidates," the Election Code's election contest procedures also apply to "special district elections," such as a PID Act formation election, "[t]o the extent procedures are incorporated or adopted by reference by separate laws governing such elections or to the extent procedures are not specified by such laws[.]" Section 1-1-19(B)(2). Thus, the Election Code's election contest procedures apply to a special district election when the laws governing the special district election incorporate the procedures. In addition, when the laws governing a special district election are silent as to the procedures, the Election Code applies as the default procedures for such an election.

{11}     In determining whether the PID Act incorporated the Election Code's election contest procedures by reference, we look to the plain meaning of the election provisions of the PID Act. *See State v. Hubble*, 2009-NMSC-014, ¶ 13, 146 N.M. 70, 206 P.3d 579 ("We first look to the plain meaning of the words chosen by the Legislature[.]"). Section 5-11-7(E) of the PID Act provides that "[e]xcept as otherwise provided by this section, [PID formation elections] shall comply with the general election laws of this state." The plain meaning therefore indicates that the Legislature intended PID Act formation elections to incorporate the same procedural protections and requirements as general elections, unless the PID Act expressly excludes or contradicts a particular procedure.

{12}     Additionally, the PID Act formation election procedures do not contain independent election contest or recount procedures. *See* § 5-11-7 (general formation election provisions). Since, by virtue of Section 1-1-19(B)(2), the Election Code provides the default procedures for a formation election under the PID Act, the absence of separate election contest or recount procedures supports the conclusion that the Legislature's language and actions indicate that the Legislature intended the Election Code to apply to formation elections under the PID Act. The Election Code's provisions, including the election contest and recount procedures, therefore apply to formation elections under the plain meaning of the PID Act.

{13}     Plaintiffs argue that the general language contained in Section 5-11-7(E) is insufficient to incorporate the election recount and contest procedures of the Election Code. Plaintiffs rely on *State ex rel. Denton v. Vinyard*, 55 N.M. 205, 207-09, 230 P.2d 238, 239-40 (1951), which held that a statute stating that "[s]uch election shall be conducted in a manner provided by law for general elections within said county or city, except as herein provided" was too general to incorporate the Election Code's contest and recount procedures. (internal quotation marks and citation omitted). While the language of Section 5-11-7(E) and the statute at issue in *Vinyard* are similar, *Vinyard* is distinguishable. At the time *Vinyard* was decided, the Election Code was silent as to its scope and did not contain a provision that stated that it applied to special district elections under any circumstance. *See generally* NMSA 1941, §§ 56-101 to -1017 (1951) (election code under previous compilation). It was not until 1969 that the Legislature added a provision to the Election Code that addressed the elections covered by the Election Code. *See* 1969 N.M. Laws, ch. 240, §§ 19-20. In addition, "special district elections" were originally excluded from the

5

Election Code "[u]nless otherwise provided in the Election Code or by separate laws governing such elections[.]" *Id.* § 20. In 1975, the Legislature changed this provision to read in the affirmative and state that "special district elections" are governed by the Election Code "[t]o the extent procedures are incorporated or adopted by reference by separate laws governing such elections." 1975 N.M. Laws, ch. 255, § 6. The Legislature again changed and expanded this provision in 1977. 1977 N.M. Laws, ch. 222, § 4. The language adopted in 1977, which is the current language in the Election Code, provides that "to the extent procedures are not specified by such laws, certain provisions of the Elections Code shall also apply to . . . special district elections." *Id.* By providing that the Election Code's election contest procedures apply when procedures are not specified, the 1977 amendment enhanced the scope of the Election Code such that the Election Code now provides the default election procedures for all special district elections, which was not the situation when *Vinyard* was decided.

**{14}** Further, *Vinyard* addressed the issue of whether the plaintiffs had a right to file an election contest under a local option statute. *Vinyard*, 55 N.M. at 209, 230 P.2d at 240. *Vinyard* recognized that the "right of recount and contest are purely statutory" and that a general statement is insufficient to incorporate the right to recount and contest. *Id.* at 207, 209, 230 P.2d at 239, 240. In this case, Plaintiffs' amended complaint does not allege a statutory right to contest, but instead raises a claim under Article 2, Section 8 of the New Mexico Constitution. We must determine whether the Election Code procedures for an election contest apply to a formation election, not whether there is a substantive right to contest the election as in *Vinyard*.

**{15}** Moreover, if Plaintiffs are correct, the statute of limitations for an election contest under the PID Act would be the general four-year statute of limitations under NMSA 1978, Section 37-1-4 (1880) (four-year catch-all statute of limitations). The practical effect would be to allow a plaintiff to challenge a formation election well after construction of a public improvement district has begun or possibly even completed. An election contest arising under the PID Act is precisely the type of case that requires the "need for speedy resolution" that the Election Code's election contest procedures provide. *Gunaji*, 2001-NMSC-028, ¶ 26.

**SCOPE OF AN ELECTION CONTEST**

**{16}** Having determined that the Election Code's election contest procedures apply to election contests of formation elections under the PID Act, we must determine whether Plaintiffs' amended complaint presents an election contest. If Plaintiffs are correct and the amended complaint does not present an election contest, the Election Code's election contest procedures, such as the thirty-day statute of limitations, do not apply. We begin by examining New Mexico case law on the question of what constitutes an election contest.

**{17}** In arguing that the amended complaint was not an election contest, Plaintiffs rely on several out-of-state cases and *Heth v. Armijo*, 83 N.M. 498, 500, 494 P.2d 160, 162 (1972), for the propositions that the defining features of an election contest are that an election was held in which one side won and that allegations "that conditions precedent to an election did

not occur, . . . such as a valid petition for the election, complete and truthful notice to the electorate, and the preparation and dissemination of proper ballots" are not election contests. Plaintiffs note that our Supreme Court stated in *Heth* that

> [s]ince the objective of the contestant in an election contest is to be declared the winner, his notice of contest should allege that he has received more legal votes than the contestee, and a failure to so allege is not a claim showing that the contestant is entitled to relief.

*Id.* at 500, 494 P.2d at 162. However, we do not read *Heth* in the limited manner Plaintiffs propose. *Heth* involved a claim by unsuccessful candidates who alleged various statutory violations of the Election Code. *Id.* at 498-99, 494 P.2d at 160-61. The candidates' notice of contest failed to state that any of the alleged illegal ballots cast were cast for contestants, that the results would have been changed, or that the contestants were entitled to the offices for which they were candidates. *Id.* at 499, 494 P.2d at 161. Our Supreme Court held that the failure to assert that the results of the election would have been different in the notice of contest is "analogous to a complaint in tort alleging that the defendant negligently struck the plaintiff, but failing to allege that the plaintiff was injured thereby." *Id.* at 500, 494 P.2d at 162. *Heth* only stands for the proposition that an election contest must contain an assertion that the underlying claim in the complaint would have changed the result of the contested election.

{18}    More recent cases clearly show that New Mexico courts have not recognized a distinction between allegations of failed conditions precedent to an election and allegations that the contestant should be declared the winner of a valid election in determining whether a complaint presents an election contest. In *Dinwiddie v. Board of County Commissioners of Lea County*, 103 N.M. 442, 443, 708 P.2d 1043, 1044 (1985), our Supreme Court addressed whether the statutory provisions concerning election contests and recounts applied to the plaintiffs' complaint. The plaintiffs made two allegations: (1) the bond election at issue was held in violation of statutory provisions for the consolidation of precincts, and (2) certain ballots were cast by persons invalidly registered. *Id.* The plaintiffs argued that even if the second claim, challenging the results of the election, was held to be an election contest subject to the Election Code's election contest procedures, the first claim, addressing the conditions precedent or validity of the election under the statute governing the election, was still outside the purview of an election contest. *Id.* at 444, 708 P.2d at 1045. Our Supreme Court did not agree with the distinction. *Id.* It stated that a "challenge to the validity of an election is also a challenge to its result, for if it is successful, the result is changed[, and s]imilarly, a challenge to the result contests the inherent validity of the election." *Id.* Therefore, under *Dinwiddie,* any challenge as to the underlying validity of an election that would necessarily require overturning the results or effects of an election is an election contest subject to the Election Code's election contest procedures.

{19}    Plaintiffs argue that *Dinwiddie* has effectively been overruled by *Gunaji.* In *Gunaji*, our Supreme Court held that the Election Code did not provide a remedy due to a "gap in the statutory scheme" in an election contest arising from ballots containing the incorrect candidates. *Gunaji*, 2001-NMSC-028, ¶¶ 2, 13-15. The plaintiffs sued the county clerk,

who was in charge of preparing the ballot, but our Supreme Court noted that the Election Code only provides for an election contest for error by the precinct board. *Id.* ¶¶ 14-15. The Court held that "[a]ssuming the Election Code does not provide a remedy when candidates' names are omitted from the ballot," there was "no barrier to our fashioning a remedy outside the Code" under Article II, Section 8 of the New Mexico Constitution. *Gunaji*, 2001-NMSC-028, ¶¶ 21, 26. The Court stated that "it is the procedure in an election contest which is exclusive, not the grounds and the remedy." *Id.* ¶ 26. Thus, even while an election contest may not arise under a specific section of the Election Code and instead alleges some other problem "compromising the validity of the election," the Election Code's election contest must be followed to "accord[] with the need for speedy resolution of election contests[.]" *Id. Gunaji* therefore does not support Plaintiffs' contention that there is a distinction between challenges to election results and the underlying validity of the election in defining an election contest. Instead, *Gunaji* supports applying the Election Code's election contest procedures even when the remedy and grounds forming the basis of the election contest are found outside the Election Code, such as noncompliance with the PID Act or the New Mexico Constitution.

{20} We thus view New Mexico case law as defining an election contest as a challenge to the result of an election, as well as a challenge to the inherent validity of an election when the challenge would necessarily require overturning the results or effects of the election. An election contest can derive from a violation of a provision of the Election Code, from a violation of another statute governing the particular election at issue, or from the New Mexico Constitution. *See Heth*, 83 N.M. at 499-500, 494 P.2d at 161-62 (election contest derived from Election Code); *Dinwiddie*, 103 N.M. at 443-44, 708 P.2d at 1044-45 (election contest challenging the underlying validity of the election based on statute governing election for issuing general obligation bonds); *Gunaji*, 2001-NMSC-028, ¶¶ 2, 26 (noting that Election Code contest procedures apply to election contests alleging a violation of Article II, Section 8 of the New Mexico Constitution). Applying the Election Code's election contest procedures to all election contests, including election contests of formation elections under the PID Act, "accords with the need for speedy resolution of election contests[.]" *Gunaji*, 2001-NMSC-028, ¶ 26.

**AMENDED COMPLAINT AS AN ELECTION CONTEST**

{21} We next turn to Plaintiffs' amended complaint to determine whether it presents an election contest and therefore must follow the Election Code's election contest procedures. Plaintiffs' amended complaint sought declarations that (1) the AFPID has no valid legal existence and all contracts and agreements made by the Board are void and unenforceable; (2) if the AFPID was formed in accordance with the law, it is illegal pursuant to Section 5-11-8(B), because the improvements for which the levy is assessed will not confer a benefit upon the property contained within the AFPID and because the levy will not confer a benefit upon the properties assessed; (3) the properties included in the 1995 reorganization plan are entitled to form a special assessment district; and (4) the AFPID has no authority to collect any tax or assessment or to expend such sums already collected.

{22} Plaintiffs argue that they base the first prayer for relief on a claim that no legal

8

election has occurred, and therefore it is not an election contest. In particular, the amended complaint alleges that the petition to form the AFPID was invalid because only the Resort signed the petition to form the AFPID, and Section 5-11-3(A) requires that the "*owners* of at least twenty-five percent of the real property" sign the petition. (Emphasis added.) Additionally, the amended complaint states that the formation election failed to comply with the requirements of the PID Act as stated in Section 5-11-7(E)(1)-(3) (requiring that the "ballot material" for a formation election include specified, detailed information). These claims relate to whether the petition and the ballot met statutory requirements required of a formation election by the PID Act, and the claims therefore challenge the underlying validity of the election. As we have discussed, these issues present an election contest. *See Dinwiddie*, 103 N.M. at 443-44, 708 P.2d at 1044-45 (holding that a claim that an election was held in violation of statutory requirements for consolidation of precincts was a challenge to the underlying validity of the election and therefore was an election contest subject to the Election Code's election contest procedures).

{23}    With regard to the second and third prayers for relief, Plaintiffs argue that they do not challenge the underlying validity of the formation election and that the amended complaint concedes that a valid election occurred. However, these prayers for relief also rest on challenges to the underlying validity of the formation election. The gist of Plaintiffs' claim of illegality of the AFPID under Section 5-11-8(B) is that the feasibility study provided in the petition inflated the projected market value of the lots within the AFPID after construction of the infrastructure improvements. Plaintiffs allege that the inflated projections in the feasibility study were "incorrect, misleading, or fraudulent" and were designed to keep the projected amount of bond indebtedness of the AFPID within the sixty percent limit of bond indebtedness to market value ratio mandated by Section 5-11-8(B). Similarly, Plaintiffs base their claim that certain properties are entitled to form a special assessment district on an assertion that the information in the petition is "incorrect, misleading, or fraudulent." Specifically, the amended complaint alleges that the petition misrepresented the AFPID as necessary to comply with the Resort's obligations under a final plan of reorganization from a 1995 bankruptcy. Both prayers for relief two and three address the accuracy of information provided to the Village and voters prior to the formation election to approve the AFPID. The claims challenge the underlying validity of the election by asserting that (1) the Village authorized the formation election and (2) voters approved the AFPID based on false, fraudulent, or misleading information designed to circumvent the requirements of the PID Act prior to the election. Further, the relief that Plaintiffs seek, allowing certain lots to form a special assessment district, as opposed to being included in the AFPID, and declaring the special levy illegal, would necessarily require overturning the election results. The second and third prayers for relief therefore state an election contest concerning the formation election. *See Dinwiddie*, 103 N.M. at 444, 708 P.2d at 1045 (holding that a "challenge to the validity of an election is also a challenge to [the] result, for if it is successful, the result is changed").

{24}    Finally, the fourth prayer for relief, that the AFPID has no authority to tax, also derives from an assertion that the formation election was not conducted in accordance with the PID Act. Specifically, Plaintiffs claim that in order to have the authority to tax, the PID Act required that the ballot have a separate ballot question specifically addressing the

authority to tax, aside from the question as to whether to form the PID. Further, the amended complaint alleges that the ballot failed to provide required details of the special levies assessed on the lot owners, as required by Section 5-11-7(E)(2) (requiring the ballot in a formation election to contain a description of district improvements and arguments for and against the imposition of the taxes and a statement that the taxes are for public infrastructure improvements and services within the district). Again, this claim challenges the underlying validity of the election based on failure to comply with statutory requirements and is therefore an election contest governed by the Election Code's election contest procedures.

**TRANSFER TO SUPREME COURT**

**{25}** Having concluded that the Election Code's election contest procedures apply to formation elections under the PID Act and that the amended complaint presented an election contest, we further conclude that this Court does not have jurisdiction over this appeal. "[L]ack of jurisdiction at any stage of the proceedings is a controlling consideration which must be resolved before going further." *In re Doe, III*, 87 N.M. 170, 171, 531 P.2d 218, 219 (Ct. App. 1975). "[W]e have a duty to determine whether [we have] jurisdiction of an appeal." *State ex rel. Dep't of Human Servs. v. Manfre*, 102 N.M. 241, 242, 693 P.2d 1273, 1274 (Ct. App. 1984). This Court is a court of limited jurisdiction and only has appellate jurisdiction as provided by law. *Id.* at 243, 693 P.2d at 1275. NMSA 1978, Section 34-5-8(A)(1) (1983) provides that this Court has appellate jurisdiction for "any civil action not specifically reserved to the jurisdiction of the supreme court by the constitution or by law."

**{26}** The Election Code, Section 1-14-5, states that "[a]n appeal shall lie from any judgment or decree entered in the contest proceeding to the supreme court of New Mexico within the time and in the manner provided by law for civil appeals from the district court." Thus, the Election Code provides that our Supreme Court has jurisdiction of direct appeals of election contests from a district court. We therefore transfer this appeal to our Supreme Court, pursuant to NMSA 1978, Section 34-5-10 (1966) ("No matter on appeal in the supreme court or the court of appeals shall be dismissed for the reason that it should have been docketed in the other court, but it shall be transferred by the court in which it is filed to the proper court.").

**CONCLUSION**

**{27}** We hold that the PID Act's formation election provisions incorporate the Election Code's election contest procedures, which require a direct appeal to our Supreme Court, and that Plaintiffs' amended complaint presented an election contest. We therefore hold that this Court lacks jurisdiction and transfer this case to our Supreme Court.

**{28}** **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

10

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Judge**


_____

**LINDA M. VANZI, Judge**

**Topic Index for _Glaser v. Lebus_, No. 29,733**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| AE-AJ | Appellate Jurisdiction |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-DS | Dismissal |
| CP-SL | Statute of Limitations |
| | |
| **GV** | **GOVERNMENT** |
| GV-EL | Elections |
| GV-LU | Land Use |
| GV-SD | Special Districts |
| | |
| **JD** | **JURISDICTION** |
| JD-AJ | Appellate Jurisdiction |
| JD-CA | Court of Appeals |
| JD-SC | Supreme Court |