This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v. **No. 33,083**

**JONAH ALBERT,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Grant L. Foutz, District Judge**

Hector H. Balderas, Attorney General
Yvonne M. Chicoine, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**GARCIA, Judge.**

{1}     Defendant appeals from his conviction for Driving While Under the Influence of Intoxicating Liquor and/or Drugs (DWI), first offense, contrary to NMSA 1978, Section 66-8-102(C)(1) (2010). Defendant's conviction was pursuant to a plea agreement, whereby the State agreed to dismiss the aggravated portion of the DWI along with the remaining counts with which Defendant was originally charged, and Defendant retained his right to appeal the issue of suppression on the grounds that there was no reasonable suspicion to warrant the initial stop. Accordingly, on appeal, Defendant raises the single argument that the State failed to demonstrate reasonable suspicion to support the traffic stop based on a violation of NMSA 1978, Section 66-7-317 (1978), the statute concerning driving on roadways laned for traffic. Defendant asks this Court to reverse the district court's denial of Defendant's motion to suppress and remand with instruction that Defendant be permitted to withdraw his plea. Because we conclude that the deputy who stopped Defendant had reasonable suspicion to make the stop under NMSA 1978, Section 66-8-114(A)-(B) (1978), the careless driving statute, we affirm.

## BACKGROUND

{2} Defendant was charged in magistrate court and entered into a plea and disposition agreement, whereby Defendant pleaded guilty to the DWI charge in exchange for the State's dismissal of the aggravated portion of the DWI and the other charges with which Defendant was charged. By the plea agreement, Defendant reserved his right to appeal "the issue of [the m]otion to suppress—[b]ad stop." Accordingly, the magistrate court entered a judgment and sentence reflecting the plea agreement. Defendant appealed to the district court and filed a motion to suppress on the basis of an illegal stop. The district court held a hearing on the motion.

{3} The deputy who arrested Defendant was the sole witness at the motion hearing. On direct examination, the deputy testified that leading up to the traffic stop with Defendant, he was heading westbound on State Highway 264 "doing traffic control." The deputy's testimony, combined with the video footage from his patrol car, showed that State Highway 264 consisted of two lanes heading westbound and two lanes heading eastbound with a median in between the westbound and eastbound lanes. The deputy testified that he saw Defendant's vehicle "up ahead of [him] in the outside lane" and "what drew [his] attention" to it "was the fact that it . . . all of the sudden . . . just drifted off . . . [and] was straddling the center line . . . for a while . . . then

quickly steered back into [the outside] lane." When the prosecutor asked the deputy if he made the stop for a violation of "roadways laned for traffic[,]" the deputy relied, "Yes, I did." On cross examination, the deputy testified that this driving behavior was "suspicious" and made him "wonder[] why he was driving in that manner." When defense counsel asked the deputy what he meant by "suspicious[,]" the deputy elaborated that "for somebody to just drive into the middle of the roadway and straddle the center line for a few feet and then quickly steer back into the outside lane . . . kinda set off a little whistle in my head saying why is this person driving the way he is." When defense counsel asked the deputy what his reason for the stop was, the deputy replied, "for straddling the center line," paused, and then added, "for failing to maintain his lane." The deputy further testified that in his experience, "sometimes you get people that minorly drive onto the edge line and get back into the roadway—those I watch—but this one was really severe to the point where he actually straddled the center line for several feet . . . mostly nobody does that."

{4}     Defense counsel asked the deputy whether Defendant's driving behavior was a violation of the lane statute even though it did not affect traffic. The deputy replied that he thought it was a violation of the lane statute. However, the deputy further articulated that people do not normally drive in that manner "unless they're tired, not

4

paying attention to what they're doing—anything like that." Defense counsel and the deputy continued to discuss whether certain circumstances would justify Defendant's driving behavior, such as taking off his jacket while driving, drinking a coke, dropping a cell phone, or looking back to talk to a child sitting in the rear seat. The deputy testified that under such circumstances, he would give the driver either a warning or a citation for "careless driving."

{5}    The district court denied Defendant's motion and verbally found that Defendant crossed the center line and violated the law. Subsequently, the district court entered an order for remand to the magistrate court to enforce the judgment, finding that the deputy had reasonable suspicion to stop Defendant. Defendant timely appealed the district court's denial of his motion to suppress to this Court.

**DISCUSSION**

{6}    On appeal, Defendant argues that the State failed to demonstrate that the deputy had reasonable suspicion to stop his vehicle because "the mere crossing the line dividing one lane from another" is not "a *per se* violation of the [lane] statute[,] [Section 66-7-317]." Defendant therefore asserts that his motion to suppress should have been granted pursuant to the Fourth and Fourteenth Amendments to the United States Constitution. Defendant makes no argument on appeal that suppression was

warranted under the New Mexico Constitution, so we do not consider such an argument. *See State v. Hubble*, 2009-NMSC-014, ¶ 6, 146 N.M. 70, 206 P.3d 579 (stating that, because the defendant did not assert that the New Mexico Constitution afforded him greater protection, the issue of reasonable suspicion would be addressed only under federal law).

**A.      Standard of Review**

{7}      "A review of the suppression of evidence is a mixed question of law and fact." *State v. Anaya*, 2008-NMCA-020, ¶ 5, 143 N.M. 431, 176 P.3d 1163. "We consider the facts in the light most favorable to the prevailing party and defer to the district court's findings of fact if those findings are supported by substantial evidence." *Id.* "Determinations of reasonable suspicion also require application of law to fact, which we review de novo." *Id.* Since the facts in this case are undisputed, we limit our review to a de novo consideration of whether the law was correctly applied to the facts. *See id.* "Questions of reasonable suspicion are reviewed . . . by looking at the totality of the circumstances to determine whether the detention was justified." *Hubble*, 2009-NMSC-014, ¶ 5 (internal quotation marks and citation omitted).

**B.  Reasonable Suspicion**

**{8}**    "[T]he Fourth Amendment to the United States Constitution control[s] the validity of investigative stops." *Anaya*, 2008-NMCA-020, ¶ 6. "Since an automobile stop is considered a 'seizure' under the Fourth and Fourteenth Amendments, it must be conducted in a reasonable manner to satisfy the Fourth Amendment." *Hubble*, 2009-NMSC-014, ¶ 7 (internal quotation marks and citation omitted). "We evaluate two factors to determine whether a stop was reasonable: (1) whether the stop was justified at its inception and (2) whether continued detention was reasonably related in scope to the original circumstances justifying the stop." *Anaya,* 2008-NMCA-020, ¶ 6. Because Defendant argues only that the stop was not justified at its inception, we examine only the first factor. *Id.*

**{9}**    "Before a police officer makes a traffic stop, he must have a reasonable suspicion of illegal activity." *Anaya*, 2008-NMCA-020, ¶ 6. "Reasonable suspicion must be based on specific articulable facts and the rational inferences that may be drawn from those facts." *Id.* (internal quotation marks and citation omitted); *see Hubble*, 2009-NMSC-014, ¶ 8 (stating that we "find reasonable suspicion if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal

7

activity occurred or was occurring"). "[C]onduct premised totally on a mistake of law cannot create the reasonable suspicion needed to make a traffic stop; but if the facts articulated by the officer support reasonable suspicion on another basis, the stop can be upheld." *Id.* ¶ 23 (internal quotation marks and citation omitted).

{10}     The deputy testified that one of the reasons he stopped Defendant was because he thought Defendant's driving behavior violated Section 66-7-317, which states, in pertinent part:

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:
>
> A.   a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety[.]

{11}     However, we need not determine whether the deputy had reasonable suspicion to stop Defendant based on a violation of Section 66-7-317 because the deputy also articulated facts that "support reasonable suspicion on another basis[.]" *Hubble*, 2009-NMSC-014, ¶ 23 (internal quotation marks and citation omitted). During his testimony, the deputy explained that in his experience "mostly nobody" straddles the center line as "severe[ly]" as Defendant did, that Defendant's driving behavior made him "wonder[] why he was driving in that manner[,]" that he was "suspicious"

8

because people do not normally drive in that manner "unless they're tired," or "not paying attention to what they're doing," and that when drivers are doing other things and not giving full attention to their driving, he would warn or cite them for "careless driving." This testimony articulated facts supporting reasonable suspicion based on a violation of Section 66-8-114(A)-(B), the careless driving statute, which requires that "[a]ny person operating a vehicle on the highway shall give his full time and entire attention to the operation of the vehicle[,]" and provides that a person "operat[ing] a vehicle in a careless, inattentive or imprudent manner" is "guilty of a misdemeanor." *See, e.g.*, *State v. Benjamin C.*, 1989-NMCA-075, ¶ 3, 109 N.M. 67, 781 P.2d 795 (affirming the legality of the traffic stop resulting in a DWI arrest where the officer stopped the defendant for driving straight through an intersection with his turn signal on, because such driving behavior constituted "careless driving" under Section 66-8-114(B) (internal quotation marks and citation omitted)).

{12}     Accordingly, viewing the facts in the light most favorable to the State by "[l]ooking at the totality of the circumstances and through an objective lens," we conclude that the deputy had a "particularized suspicion that Defendant was breaking, or had broken the law[]" that also requires drivers to give their full time and entire attention to the operation of their vehicle on the highway. *Hubble*, 2009-NMSC-014,

¶ 35 (alterations, internal quotation marks, and citation omitted); Section 66-8-114(A). Therefore, regardless of the magistrate court's and district court's conclusion that the deputy had reasonable suspicion to stop Defendant based on a violation of the lane statute, the stop was proper under an alternative statute—the careless driving statute. *See Hubble*, 2009-NMSC-014, ¶ 23; *see also State v. Vargas*, 2008-NMSC-019, ¶ 8, 143 N.M. 692, 181 P.3d 684 ("Under the 'right for any reason' doctrine, we may affirm the district court's order on grounds not relied upon by the district court if those grounds do not require us to look beyond the factual allegations that were raised and considered below." (internal quotation marks and citation omitted)).

**CONCLUSION**

{13}     For the foregoing reasons, we affirm the district court's denial of Defendant's motion to suppress and its remand to the magistrate court to enforce the judgment. This matter is now remanded for such further proceedings as may be necessary to enforce the original judgment entered by the magistrate court.

{14}     **IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

10

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**


_____
**M. MONICA ZAMORA, Judge**

11