Certiorari Denied, March 28, 2014, No. 34,569

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2014-NMCA-043**

**Filing Date: February 11, 2014**

**Docket No. 32,585**

**STATE OF NEW MEXICO,**

**Plaintiff-Appellee,**

**v.**

**JOSEPH SALAS,**

**Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY**
**Abigail Aragon, District Judge**

Gary K. King, Attorney General
Corinna Laszlo-Henry, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**SUTIN, Judge.**

**{1}**     Police Officer Gene Gonzales, along with Officer Jonathan Wright, stopped Defendant Joseph Salas after the officers observed Defendant driving erratically. Defendant ultimately was arrested for driving while intoxicated (DWI). After losing motions to suppress and to dismiss for violations of his speedy and jury trial rights, Defendant entered a conditional plea of guilty to DWI. On appeal, he challenges the stop for lack of reasonable

suspicion, and he also contends that he was denied his constitutional speedy and jury trial rights.[1] Determining that Defendant's appellate points are meritless, we affirm Defendant's conviction.

## BACKGROUND

**{2}** The facts and the court's findings are not contested. The facts involving the stop and arrest derive from the suppression hearing testimony. The two officers observed Defendant driving southbound on a highway consisting of two lanes in each direction with a median in between. The officers were traveling behind Defendant's vehicle in a New Mexico State Police patrol car. Officer Gonzales testified that he observed Defendant's vehicle cross over the dashed lines on the road. Officer Gonzales then witnessed Defendant make a sudden left turn from the far right lane into a driveway, without using his turn signal. Officer Gonzales testified that while making this turn, Defendant's vehicle crossed over the other southbound lane, the median, and both northbound lanes. Officer Wright testified that he observed Defendant's vehicle fail to maintain its traffic lane and then make a left turn from the far right lane. Officer Wright further testified that he did not see any apparent reason for Defendant's driving behavior. Based on the officers' testimony and on an audio-visual recording relating to the stop reviewed by the district court judge in chambers, the district court made uncontroverted, verbal findings that Defendant's vehicle "drifted approximately one-half car length into the parallel lane, across the dash[ed] white line[,]" Defendant "continued to travel back into his original right lane, and then abruptly made a left turn from the far right lane without using his signal." Defendant acknowledged his erratic driving verbally to Officer Gonzales. Defendant received a warning citation for failing to maintain his lane, contrary to NMSA 1978, Section 66-7-317(A) (1978), and he signed the warning citation, agreeing that the traffic violation had occurred. Officer Gonzales believed that Defendant violated traffic laws, and he also believed that Defendant's driving was indicative of possible impairment.

**{3}** Defendant was charged with DWI in magistrate court on April 29, 2011. On the day of trial, January 19, 2012, but before trial commenced, the State orally dismissed the charge. On January 23, 2012, the State filed a notice of dismissal of the charge, and on January 31, 2012, it re-filed the charge in district court, claiming that the magistrate court, before trial,

---

[1] Defendant asserts the protections of both the United States and New Mexico Constitutions. Defendant does not engage in any argument or analysis as to whether he should receive greater protection under the New Mexico Constitution than that available under the United States Constitution. *See State v. Gomez*, 1997-NMSC-006, ¶¶ 20-23, 122 N.M. 777, 932 P.2d 1 (adopting and analyzing the interstitial approach to constitutional interpretation). Nor does he show where such an argument was preserved in the district court. *See id.* ¶ 23 (requiring a defendant to assert in the trial court that the state constitutional provision at issue should be interpreted more expansively than the federal counterpart). We therefore do not address the issue.

had suppressed substantial proof in the State's case—the dash-cam video related to the stop.

**{4}** Defendant moved to dismiss in district court on March 12, 2012, arguing that, pursuant to Magistrate Court Rule 6-506(B)(1) NMRA's six-month requirement, the case should be dismissed because the time had run. Defendant recognized that, barring improper motive, the State could dismiss the magistrate court case and re-file in district court, *see State v. Heinsen*, 2005-NMSC-035, ¶¶ 23, 25, 138 N.M. 441, 121 P.3d 1040, but argued that the State failed to dismiss prior to trial and that the State's motive in dismissing was improper because it was done to circumvent Defendant's due process rights based on the 182-day limit in Rule 6-506(B)(1) for trying the case in magistrate court. Defendant argued that the State's dismissal of the magistrate court DWI charge was done solely to give the prosecution time to assure that Officer Gonzales, who was not present for the scheduled magistrate court trial, could attend trial and testify and that the State simply wanted to get "a second bite at the apple" after the State's unpreparedness at trial in the magistrate court. *See State v. Ahasteen*, 1998-NMCA-158, ¶ 22, 126 N.M. 238, 968 P.2d 328 (stating that a prosecutor's charging discretion is limited when based on improper motive), *abrogated on other grounds by State v. Savedra*, 2010-NMSC-025, 148 N.M. 301, 236 P.3d 20.

**{5}** The State filed its response on March 23, 2012, to Defendant's motion to dismiss, indicating that the controlling rule was District Court Rule 5-604(B) NMRA and that Defendant's motion was governed by the five factors set out in that rule derived from *Barker v. Wingo*, 407 U.S. 514 (1972), *Savedra*, 2010-NMSC-025, and *State v. Garza*, 2009-NMSC-038, 146 N.M. 499, 212 P.3d 387. The motion to dismiss then turned into a question whether Defendant was denied a speedy trial under the factors stated in Rule 5-604(B). The motion to dismiss was heard on May 14, 2012. Afterward, in a letter to the parties dated May 30, 2012, citing *Barker*, *Garza*, and *State v. Sharp*, 2012-NMCA-042, 276 P.3d 969, the court determined that "the State had a reasonable basis to file a Nolle Prosequi in the [magistrate court]," and further, based on its analysis of the speedy trial factors in the controlling cases, the court found that, although the case was a simple one, Defendant was responsible for the delay of which he complained, he failed to assert a demand for speedy trial, and he failed to show prejudice.

**{6}** On June 8, 2012, Defendant filed a motion to reconsider the court's May 30, 2012, decision, arguing that *Sharp* was not applicable and that the case involved instead "the determination of whether the State's dismissal in the [m]agistrate [c]ourt and re-filing in the [d]istrict [c]ourt were properly motivated." Simultaneously, Defendant filed requested findings of fact and conclusions of law related to his motion to dismiss, in which he reiterated the applicability of Rule 6-506(B)(1) and his argument in regard to the prosecution's improper motive. On June 11, 2012, the court entered an order denying Defendant's motion to dismiss.

**{7}** During the pendency of Defendant's motion to dismiss based on his purported speedy trial right, Defendant, on April 25, 2012, filed a demand for jury trial. The State moved to strike the demand on June 1, 2012. The court never ruled on the motion.

**{8}** On June 12, 2012, Defendant moved to suppress all evidence arising from the traffic stop. Defendant did not testify at the suppression hearing, which occurred on July 10, 2012. Officers Gonzales and Wright testified. At the close of the hearing, based on the totality of the circumstances and *State v. Hubble*, 2009-NMSC-014, 146 N.M. 70, 206 P.3d 579, the district court denied Defendant's motion to suppress.

**{9}** Defendant and the State entered into a conditional plea and disposition agreement dated and signed October 9, and filed October 10, 2012. At Defendant's sentencing hearing on October 9, 2012, the prosecutor discussed the conditions of the plea and specifically noted that the agreement reserved for appeal the issue of "the court's denial of the motion to suppress." The court received assurances from Defendant that he understood the agreement, he was advised of his rights, and he had not been promised anything other than what was contained in the agreement. The agreement stated that Defendant, by pleading guilty to the DWI charge, understood that he was giving up the right to trial by jury. In addition, Defendant expressly waived his right to appeal the DWI conviction that resulted from entry of the agreement. Defendant reserved only his right to appeal the court's denial of his motion to suppress, at the same time expressly giving up all motions and defenses that he had made or raised or could assert.

**{10}** On October 26, 2012, the court entered a judgment and sentence that referred to the conditional plea and disposition agreement as having been "accepted and recorded by the [c]ourt[,]" yet stated that "Defendant reserves the right to appeal the [c]ourt's decision regarding the denial of the [m]otion to [s]uppress filed by . . . Defendant, as stated in the conditional plea agreement entered into on October 9, 2012, and the right[s] to any other issues arising and/or pertaining to this case." The parties do not indicate, and nothing in the record before us indicates, how or why the court added language to the parties' plea and disposition agreement purporting to broaden the agreement to permit a carte blanche appeal. Nor is there anything in the record indicating why the prosecutor did not at any time after the judgment and sentence was entered bring this apparent broadening of Defendant's appeal right to the court's attention as inappropriate or unauthorized action by the court.

**{11}** Defendant saw the breadth given to him by the judgment and sentence and he appealed not only the court's denial of his motion to suppress, but also the State's alleged inappropriate dismissal and re-filing of the charges and the related violation of his speedy trial right, and the violation of his right to a jury trial.

**DISCUSSION**

**The Suppression Issue**

**{12}** "In reviewing a trial court's denial of a motion to suppress, we observe the distinction between factual determinations which are subject to a substantial evidence standard of review and application of law to the facts, which is subject to de novo review. We view the facts in the manner most favorable to the prevailing party and defer to the

4

district court's findings of fact if substantial evidence exists to support those findings. Questions of reasonable suspicion are reviewed de novo by looking at the totality of the circumstances to determine whether the detention was justified." *Hubble*, 2009-NMSC-014, ¶ 5 (alteration, internal quotation marks, and citations omitted).

**{13}** Section 66-7-317(A), the violated traffic law for which Defendant received and signed a warning citation, requires that "a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety[.]" Defendant contends that the officers did not have reasonable suspicion to stop him based on his driving conduct because "no hazard or peril was created by his actions."

**{14}** Under the totality of circumstances, the district court did not err in denying Defendant's motion to suppress. The officers' observations gave rise to reasonable inferences and thus reasonable suspicion that one or more traffic offenses had occurred. *See State v. Anaya*, 2008-NMCA-020, ¶¶ 13-15, 143 N.M. 431, 176 P.3d 1163 (indicating that where there exist facts to support the inference that a law has been violated, a stop is objectively reasonable, even in instances in which the facts articulated by the officer support reasonable suspicion as to violation of an offense other than that for which the motorist was stopped). While there may not have been other traffic at the particular instance of Defendant's erratic driving, Officer Wright recalled seeing vehicles traveling in the northbound lanes (but recalling no safety issue at the time of Defendant's turn), and the officers' police car was traveling southbound some distance behind Defendant. Officer Gonzales identified himself as other traffic on the roadway that was affected by the movements of Defendant's vehicle. Officer Gonzales also suggested that any overcorrecting might cause a rollover accident. Further, Officer Gonzales believed that Defendant's erratic driving indicated possible impairment, and Officer Wright could not think of a justification for Defendant's driving activity.

**{15}** Also significant in the mix, erratic driving, such as that in this case, can well present a concern in the judgment of an experienced police officer about safety and danger to northbound or southbound traffic were Defendant to have been permitted to continue his travels. Nothing in the record indicates that Defendant ascertained that his movements could be made with safety, that he was conscious of or focused on safety or risk, or that his condition was such that he would not continue to drive erratically. A reasonable inference could be drawn that Defendant drove in a manner that would indicate that he was not concerned about possible vehicular travel coming from behind or northbound. The officers had legitimate and reasonable suspicion that lane and illegal turn-related traffic offenses occurred. Officer Gonzales had legitimate and reasonable suspicion of impairment due to Defendant's erratic driving. And nothing in the record indicates that the officers had any reason to believe that Defendant's behavior could be justified by any existing circumstance. The officers certainly would have justified concern about Defendant continuing to drive. We are persuaded that, in the balance, and under the totality of circumstances, the stop advanced the public interest well over the minimal intrusion into Defendant's liberty interest. *See*

5

*State v. Contreras*, 2003-NMCA-129, ¶¶ 13-16, 134 N.M. 503, 79 P.3d 1111 (discussing the balancing test for determining the reasonableness of a traffic stop based on an anonymous caller's information regarding the defendant's erratic driving). We hold that under the totality of circumstances, after observing his erratic driving, the officers lawfully stopped Defendant based on the traffic offenses they observed and to investigate whether he was impaired and a danger on the road.

**{16}** Defendant's attempt to negate reasonable suspicion by arguing that the officers acted under a mistake of law in regard to the traffic offenses for which he was stopped is of no avail. *See Hubble*, 2009-NMSC-014, ¶ 22 (clarifying the distinction between a mistake of law and a mistake of fact). First, this argument ignores that Officer Gonzales stopped Defendant for reasons in addition to drifting over lane markers. The officer believed that Defendant may have been impaired. And the officer had concerns about Defendant's illegal turn. Second, we see no mistake of fact or law. It is reasonably likely that had Defendant been cited for violating both lane-change and turn-related traffic offenses, he could have been convicted of the offenses. Third, any mistake could only have been one of fact, not law. *See id.* (characterizing a mistake of fact as a "mistake about a fact that is material to the transaction[,]" distinguishing that from a mistake of law, characterized as a "mistake about the legal effect of a known fact or situation" (internal quotation marks and citation omitted)). Any possible mistake was only as to whether Defendant "first ascertained" whether his drifting and then turning could be made safely. Under the totality of circumstances here, this would not amount to a mistake of law. Mistakes of fact such as this do not negate reasonable suspicion. *Id.* ¶¶ 31-32 (holding that the officer did not make any mistake, but even if he did, the mistake was one of fact—determining whether the relative positions of vehicles and their direction of travel constituted a scenario where he may have been affected by the defendant's movement—and that "any mistakes regarding these factual judgments would be classified as mistakes of fact and not mistakes of law").

**Speedy Trial and Jury Trial Issues**

**{17}** "A plea agreement is a unique form of contract the terms of which must be interpreted, understood, and approved by the trial court." *State v. Mares*, 1994-NMSC-123, ¶ 12, 119 N.M. 48, 888 P.2d 930. A plea of guilty made voluntarily, "after advice of counsel and with full understanding of the consequences, waives objections to prior defects in the proceedings and also operates as a waiver of statutory or constitutional rights, including the right to appeal." *State v. Hodge*, 1994-NMSC-087, ¶ 14, 118 N.M. 410, 882 P.2d 1. "Entry of a conditional plea is contingent upon approval of the court and consent of the prosecution." *Id.* ¶ 20. While this Court might pardon some informalities of a conditional plea, we still require the defendant to "express[] an intention to preserve a particular pretrial issue for appeal that neither the government nor the district court opposed[.]" *Id.* ¶¶ 21, 27 (internal quotation marks and citation omitted).

**{18}** The conditional plea and disposition agreement Defendant signed reserved one particular pretrial issue only for appeal, namely, the denial of his motion to suppress. Yet

the court, apparently sua sponte, broadened the issues that Defendant could raise on appeal to an extent equaling what Defendant could raise on appeal after a jury trial and conviction. With no explanation in the record, we can only assume that the district court added the carte blanche conditional appeal right language to the judgment and sentence without any discussion with or agreement of the State. We can only assume that the district court inadvertently added the carte blanche appeal language. We fault the prosecution for not catching this addition after the sentence was entered. In its answer brief, the State does not say head-on that it did not agree to any change in the conditional plea agreement. The State appears to suggest that it did not agree to any expansion of the conditional plea and right to appeal in its unsupported representation to this Court that "[t]he prosecution and the district court were not allowed the opportunity to reject [the] material change in the conditions of the conditional plea." We could remand for further proceedings in regard to the district court's intent and authority to change the plea agreement language in an attempt to uncover why the prosecution did not catch and seek to have the addition corrected. We choose not to go that route.

{19}    Defendant very clearly did not reserve in his conditional plea agreement a right to appeal based on speedy or jury trial right violations. He expressly waived any jury trial right. He expressly gave up any relief that he had attempted or could have attempted through motion. This covered his motion for a jury trial and his motion to dismiss based on the conduct of the prosecution leading to an asserted speedy trial violation. We agree with the State that Defendant should not be permitted to raise the additional issues on appeal. We therefore reject those appellate contentions.

**CONCLUSION**

{20}    We affirm Defendant's conviction. The court did not err in denying Defendant's motion to suppress. Defendant's speedy and jury trial arguments are neither viable nor meritorious, and there existed no error as to those claims.

{21}    **IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**


_____
**LINDA M. VANZI, Judge**

**Topic Index for *State v. Salas*, No. 32,585**

**APPEAL AND ERROR**
Standard of Review

**CONSTITUTIONAL LAW**
Suppression of Evidence

**CRIMINAL LAW**
Driving While Intoxicated

**CRIMINAL PROCEDURE**
Motion to Suppress
Reasonable Suspicion
Right to Speedy Trial
Right to Trial by Jury

**EVIDENCE**
Suppression of Evidence