# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: June 24, 2015

**NO. 33,682**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**ZACHARY DOPSLAF,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Christina P. Argyres, District Judge**

Hector H. Balderas, Attorney General
Margaret McLean, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Santa Fe, NM
Josephine H. Ford, Assistant Public Defender
Albuquerque, NM

for Appellant

**OPINION**

**FRY, Judge.**

{1}     Defendant appeals the denial of his motion to suppress evidence. Defendant was pulled over by police in downtown Albuquerque, New Mexico, after he performed a U-turn across the middle of the street. Defendant argues that the officer did not have reasonable suspicion to pull him over because the officer incorrectly believed that Defendant violated NMSA 1978, Section 66-7-319 (1978) (driving on divided highways) when he made the U-turn. We conclude that, even assuming the officer was mistaken about the application of Section 66-7-319, the officer's mistake was reasonable, and the officer had reasonable suspicion to pull Defendant over. Accordingly, we affirm.

**BACKGROUND**

{2}     As an initial matter, we clarify that our review of the facts in this case is limited to Officer Daniel Burge's testimony because this was the only evidence presented. Therefore, we do not consider Defendant's statements at sentencing regarding the stop, nor do we consider the diagrams Defendant incorporated in his brief on appeal.

{3}     Officer Burge testified that he first observed Defendant's vehicle parked on Central Avenue in downtown Albuquerque. Officer Burge observed Defendant pull out of the parking spot and perform a U-turn across a "painted center median."

10:35:05] After performing the U-turn, Defendant sped off down Central. Officer Burge followed Defendant and pulled him over. Upon approaching the vehicle, Officer Burge testified that he smelled alcohol and that Defendant appeared to be intoxicated. Following Defendant's performance on the field sobriety tests and a subsequent chemical test, he was arrested and charged with DWI. He was also cited for violating Section 66-7-319.

{4}      Officer Burge described the "painted center median" that Defendant crossed as consisting of a solid yellow line on the outside with a dotted yellow line on the inside. Given that Officer Burge testified that these markings created a median, we understand his description to include two sets of these markings offsetting an unpainted portion of the road. Officer Burge further testified that at both ends of the median were white turn bays corresponding to the intersections at the ends of the block. Defendant, however, crossed at the center portion of the median, not at either of the intersections. Officer Burge testified that there is no place in which to turn from this median, such as a side street, because the block is lined with businesses. Officer Burge further testified that law enforcement officers often use these medians to park. While Officer Burge also stated that he had never personally witnessed a delivery vehicle parked in the center median, he acknowledged that it was conceivable that one could. Finally, Officer Burge testified that, although there was no sign prohibiting

U-turns on the street, he believed that Defendant's actions violated Section 66-7-319 because he crossed the solid yellow lines and the median.

{5} Defendant moved to suppress evidence at trial in metropolitan court on the basis that the stop violated the Fourth Amendment because Officer Burge did not have reasonable suspicion to believe that Defendant committed a traffic violation. The metropolitan court concluded that Officer Burge had reasonable suspicion to believe that Defendant violated Section 66-7-319 because the painted median constituted an "intervening space" or a "clearly indicated dividing section so constructed as to impede vehicular traffic" and denied the motion. Section 66-7-319. The metropolitan court subsequently convicted Defendant of DWI and violation of Section 66-7-319. Defendant then appealed to the district court. The district court affirmed. Defendant now appeals to this Court.

**DISCUSSION**

{6} Defendant challenged the stop under the Fourth Amendment. Our review is therefore limited to the reasonable suspicion analysis under the Fourth Amendment and not under any potential broader protections afforded by Article II, Section 10 of the New Mexico Constitution. *See State v. Hubble*, 2009-NMSC-014, ¶ 6, 146 N.M. 70, 206 P.3d 579. The basis of Defendant's challenge is that Officer Burge committed a mistake of law in believing that Defendant's U-turn constituted a violation of

Section 66-7-319. Because of Officer Burge's alleged mistake, Defendant argues that reasonable suspicion did not exist to justify the stop.

**Standard of Review**

{7}     "A review of the suppression of evidence is a mixed question of law and fact." *State v. Anaya*, 2008-NMCA-020, ¶ 5, 143 N.M. 431, 176 P.3d 1163. While we generally defer to the district court's findings of fact if the findings are supported by substantial evidence, *id.*, as a mixed question of law and fact, we determine constitutional reasonableness de novo. *State v. Vanderberg,* 2003-NMSC-030, ¶ 19, 134 N.M. 366, 81 P.3d 19.

**Mistakes of Law and Reasonable Suspicion Under the Fourth Amendment**

{8}     "Since an automobile stop is considered a seizure under the Fourth and Fourteenth Amendments, it must be conducted in a reasonable manner to satisfy the Fourth Amendment." *Hubble*, 2009-NMSC-014, ¶ 7 (internal quotation marks and citation omitted). Therefore, "[b]efore a police officer makes a traffic stop, he must have a reasonable suspicion of illegal activity." *Id.* (internal quotation marks and citation omitted). "A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856. The appellate courts "will find reasonable suspicion if the officer is aware of

specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Hubble*, 2009-NMSC-014, ¶ 8 (internal quotation marks and citation omitted).

{9} The issue presented in this case is whether an officer's mistake of law can form the basis of the officer's reasonable suspicion to initiate the traffic stop. *See id.* ¶ 22 ("A mistake of law is a mistake about the legal effect of a known fact or situation[.]"). (internal quotation marks and citation omitted)). In *Anaya*, this Court, in line with the majority position at the time, held that while "conduct premised totally on a mistake of law cannot create the reasonable suspicion needed to make a traffic stop[,] if the facts articulated by the officer support reasonable suspicion on another basis, the stop can be upheld." 2008-NMCA-020, ¶¶ 7, 15. In *Hubble*, our Supreme Court concluded, in dicta, that the holding in *Anaya* was consistent with New Mexico's reasonable suspicion analysis. *Hubble,* 2009-NMSC-014, ¶ 27 ("In essence, the second part of the *Anaya* proposition [that reasonable suspicion on a basis other than the mistake of law can justify the stop] is our objective test for reasonable suspicion."). The Court stated that "it is not fatal in terms of reasonable suspicion if an officer makes a mistake of law when he conducts a traffic stop; courts will still look objectively to the totality of the circumstances surrounding the officer's decision

5

to conduct the traffic stop in order to determine if he or she had reasonable suspicion." *Id.* ¶ 28.

{10} However, *Anaya*'s holding that a stop cannot be justified by an officer's reasonable mistake of law was recently rejected by the United States Supreme Court in *Heien v. North Carolina*, ___ U.S. ___, ___, 135 S. Ct. 530 (2014). In *Heien*, the Supreme Court held that an officer's reasonable mistake of law could support a finding of reasonable suspicion to conduct a lawful traffic stop under the Fourth Amendment. *Id.* at 534. The Court cautioned that "[t]he Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable." *Id.* at 539. Thus, the officer's subjective understanding of the law is immaterial, and "an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce." *Id.* at 539-40.

{11} Because *Anaya* holds that a stop cannot be based totally on an officer's reasonable mistake of law, *Anaya*, and our Supreme Court's dicta in *Hubble* affirming that analysis, no longer represent the appropriate inquiry under the Fourth Amendment. While we acknowledge that "[a]ppeals in this Court are governed by the decisions of the New Mexico Supreme Court—including decisions involving federal law, and even when a United States Supreme Court decision seems contra[,]" *Dalton v. Santander Consumer USA, Inc.*, 2015-NMCA-030, ¶ 30, 345 P.3d 1086

6

(internal quotation marks and citation omitted), we conclude that, *Hubble* notwithstanding, the appropriate test to apply in this case is that found in *Heien*. *Hubble*'s discussion of *Anaya*'s holding is dicta and, as such, is not binding authority. *See Hubble,* 2009-NMSC-014, ¶ 21 (concluding that the defendant was properly stopped for a violation of the traffic code but stating that "in order to clarify the law regarding reasonable suspicion, we take this opportunity to discuss mistakes of law and mistakes of fact and how they interact with reasonable suspicion"); *State v. Johnson*, 2001-NMSC-001, ¶ 16, 130 N.M. 6, 15 P.3d 1233 (stating that although the Court of Appeals should give deference to Supreme Court dicta, it is not binding authority). Accordingly, we now turn to the facts of this case as viewed through the lens of the *Heien* decision.

{12}     Perhaps owing to the inquiry under *Anaya*, Defendant's argument seems geared more toward showing that Defendant did not actually violate Section 66-7-319 rather than toward arguing that a mistake of law, assuming one was committed, was unreasonable.[1] Defendant cites numerous sections of the Manual on Uniform Traffic Control Devices (MUTCD) and the New Mexico Sign and Striping Manual in

---

[1]Defendant does not separately argue that his conviction under Section 66-7-319 was improper. Therefore, we limit our analysis to whether the trial court erred in denying the motion to suppress, i.e., whether Officer Burge committed a reasonable mistake of law when he stopped Defendant, not whether Defendant actually violated Section 66-7-319.

arguing that Defendant could not have violated Section 66-7-319. However, even under the stricter test utilized in *Anaya*, the determination of whether an officer had "reasonable suspicion to make the traffic stop does not hinge on whether [the d]efendant actually violated the underlying . . . statute." *Hubble*, 2009-NMSC-014, ¶ 9. In restating Defendant's arguments in light of the proper standard, we understand his main point to be that, given the "broken line" pavement markings, it was objectively unreasonable for Officer Burge to believe that crossing over the median was a violation of Section 66-7-319.

{13}    Section 66-7-319 states:

> Whenever any highway has been divided into two roadways by leaving an intervening space or by a physical barrier or clearly indicated dividing section so constructed as to impede vehicular traffic, every vehicle shall be driven only upon the right-hand roadway and no vehicle shall be driven over, across or within any such dividing space, barrier[,] or section, except through an opening in such physical barrier or dividing section or space or at a crossover or intersection established by public authority.

The term "highway," as used in the statute, is synonymous with "street" and is defined as "every way or place generally open to the use of the public as a matter of right for the purpose of vehicular travel[.]" NMSA 1978, § 66-1-4.8(B) (1991). While the road at issue would clearly fall under the definition of "highway," central to this case is whether the median at issue creates a "divided highway" under Section 66-7-319. The statute delineates three general indicators that a particular street is a divided

8

highway: where there is an "intervening space," a "physical barrier," or a "clearly indicated dividing section so constructed as to impede vehicular traffic[.]" *Id.* Based on Officer Burge's testimony and the fact that Defendant executed a U-turn, it is undisputed that no physical barrier separated the two lanes of traffic. Therefore, the issue is whether it was objectively reasonable for Officer Burge to believe that the median constituted an "intervening space" or "clearly indicated dividing section" so as to be considered a "divided highway" under Section 66-7-319.

{14} We first clarify that the fact that the median in this case was off-set by painted markings is not determinative. The statute itself is not specific on this point. However, the New Mexico Administrative Code indicates that divided highways can be created by "standard pavement markings[.]" NMAC 18.31.6.7(AD). Accordingly, it is, at the least, objectively reasonable to conclude that "standard pavement markings" are a legitimate means of creating a divided highway.

{15} Section 66-7-319 does not provide guidance as to the types of pavement markings required to establish an intervening space or divided section. Defendant therefore argues that, based on national traffic standards, the pavement markings in this case cannot be construed to create an intervening space or divided section under Section 66-7-319. Citing the MUTCD, Defendant argues that broken lines indicate a "permissive condition," whereas a "solid line discourages or prohibits crossing

9

(depending on the specific application)," MUTCD, § 3A.06(01)(B), (C) (2009), and that, in certain contexts, the combination of a solid yellow and broken line indicates a lane that can be used by traffic in either direction. Again construing Defendant's argument in light of the proper standard, his argument is that it was unreasonable for Officer Burge to believe that crossing over these types of pavement markings constituted a violation of Section 66-7-319.

{16}     Defendant's references to the MUTCD highlight the ambiguity presented by the facts in this case. The MUTCD does not specifically discuss the median described in Officer Burge's testimony. And included in the MUTCD's examples cited by Defendant are other markings that conceivably distinguish the examples from the present case. These other markings include the presence of left turn arrows within a median similar to the one described by Officer Burge, or the use of yellow lines that denote "[t]he separation of traffic traveling in opposite directions" or "[t]he left-hand edge of the roadways of divided highways." MUTCD, § 3A.05(03)(A), (B) (2009). As Justice Kagan stated in her concurrence in *Heien,* statutes that pose "a really difficult or very hard question of statutory interpretation" lend credence to the conclusion that an officer made a reasonable mistake of law. 135 S. Ct. at 541 (Kagan, J., concurring) (internal quotation marks and citation omitted). If the issue before us was whether Defendant actually violated Section 66-7-319, these

ambiguities would require intensive interpretation to resolve. But, as to the question presented in this case, the multitude of MUTCD provisions and diagrams required to determine whether it was permissible to cross the median tend to support the reasonableness of Officer Burge's belief that Defendant committed a traffic violation.

{17}   Therefore, even assuming, as Defendant argues, that the broken line permitted entry into the median, we conclude that it was objectively reasonable for Officer Burge to believe that the median was designed to prohibit Defendant's maneuver. That is, it is reasonable to believe that the use of a combination of solid and broken yellow lines to form a median permitted entry into the median for certain purposes—such as for use by police officers, as Officer Burge testified—but prohibited crossing completely over the median from one lane of traffic to the other. The lack of definitive guidance under Section 66-7-319 as to what constitutes an intervening space or a clearly indicated divided section, in combination with Officer Burge's observation of Defendant crossing two solid yellow lines, is sufficient to make the stop, assuming it was a mistake of law, a reasonable one. *See Heien*, 135 S. Ct. at 541 (Kagan, J., concurring) ("If the statute is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretative work, then the officer has made a reasonable mistake."). Accordingly, Officer Burge had reasonable suspicion to pull Defendant over. Because Defendant did not argue that the stop was

11

unreasonable or pretextual under Article II, Section 10 of the New Mexico Constitution, our analysis ends with this determination.

**CONCLUSION**

{18}   For the foregoing reasons, we affirm the denial of Defendant's motion to suppress.

{19}   **IT IS SO ORDERED.**


_____
**CYNTHIA A. FRY, Judge**


**I CONCUR:**


_____
**JONATHAN B. SUTIN, Judge**


**RODERICK T. KENNEDY, Judge, dissenting**

**KENNEDY, Judge (dissenting)**

(20)    I respectfully dissent. Albuquerque Municipal Code § 8-2-6-10 (1975) permits any U-turn that can "be made in safety and without interfering with any other traffic, and there is no sign prohibiting a U-turn".  I do not believe the officer's mistake of law was objectively reasonable.  The Metropolitan Court's stretch of construction involving "clearly driving section so constructed as to impede vehicular travel" is unhelpful.

_____

**RODERICK T. KENNEDY, Judge**