This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.                               **No. A-1-CA-36931**

**JEREMY JAKE,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Daylene A. Marsh, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Margaret Crabb, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant.

### MEMORANDUM OPINION

**VANZI, Judge.**

**{1}**    Defendant Jeremy Jake appeals the district court's order denying his motion to suppress evidence obtained from a traffic stop on the ground that the stop was not supported by reasonable suspicion. We affirm.

### BACKGROUND

**{2}**    At approximately 10:00 p.m. on December 21, 2016, Officer Daniel Sedillos was driving on a two-lane road divided by a double yellow center line when he passed

Defendant traveling in the opposite direction. After observing Defendant driving "near the center line," Officer Sedillos made a U-turn and began to follow Defendant. Shortly after turning around, Officer Sedillos saw Defendant swerve over the double yellow center line with both left tires and quickly correct back into his lane, at which point he stopped Defendant. Defendant was cited for failure to maintain his lane, in violation of NMSA 1978, Section 66-7-317(A) (1978), which provides,

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic . . . a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety[.]

Additionally, Defendant was ultimately arrested and charged with driving while intoxicated (DWI) in violation of NMSA 1978, Section 66-8-102(C)(2) (2016).

**{3}** Defendant moved to suppress the evidence obtained from the traffic stop, arguing that the initial stop violated the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution because it was not supported by reasonable suspicion. At the suppression hearing, Officer Sedillos, the sole witness, testified to his observations of Defendant's driving. On cross-examination, Officer Sedillos stated that there were no other vehicles passing Defendant at the time he saw Defendant swerve out of his lane. While Officer Sedillos did not see any hazard posed to another driver at the time of the swerve, he testified that if there had been another vehicle in the oncoming lane, Defendant could have crashed into it. In addition to Officer Sedillos's testimony, the district court reviewed the officer's dash cam video. The video showed four cars pass Defendant in the opposite direction before and immediately after Officer Sedillos stopped him. Although the dash cam did not capture the double yellow line at the point where Defendant swerved (according to Officer Sedillos), which occurred "quite a ways" ahead of the patrol car, Officer Sedillos testified that his view of Defendant's car and the road was better than that shown on the dash cam video and that he clearly saw Defendant swerve out of his lane.

**{4}** After hearing Officer Sedillos's testimony and reviewing the dash cam video, the district court denied Defendant's motion and entered findings of fact and conclusions of law. The district court's findings largely summarized Officer Sedillos's testimony about his observations of Defendant's swerve. However, the district court found that the dash cam video did not show Defendant's vehicle crossing the center line. Although the district court found that the dash cam video showed that at least three vehicles passed Defendant at the time of the stop, it found that "there were no other vehicles on the road [when Defendant swerved], therefore, it was not a safety issue." Aside from restating black letter law on reasonable suspicion, the district court did not make any relevant conclusions of law applying the law to the facts. Defendant now appeals.

**DISCUSSION**

**{5}** "Because suppression of evidence is a mixed question of law and fact, we apply a two-part review to the district court's denial of the motion to suppress." *State v. Scharff*, 2012-NMCA-087, ¶ 8, 284 P.3d 447. "[W]e review the facts in the light most favorable to the prevailing party, deferring to the district court's factual findings so long as substantial evidence exists to support those findings." *State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Jean-Paul*, 2013-NMCA-032, ¶ 4, 295 P.3d 1072 (internal quotation marks and citation omitted). "[W]here the district court made no findings of fact, our practice has been to employ presumptions and as a general rule, we will indulge in all reasonable presumptions in support of the district court's ruling." *State v. Zamora*, 2005-NMCA-039, ¶ 8, 137 N.M. 301, 110 P.3d 517 (omission, alteration, internal quotation marks, and citation omitted). "Our review of a district court's determination of whether reasonable suspicion existed is de novo based on the totality of the circumstances." *State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861.

**{6}** As a preliminary matter, Defendant claims that the district court's findings are "extremely unclear and cannot be relied upon." Defendant argues that it is unclear if the district court found that Defendant crossed the center line because the district court simultaneously found that (1) "Officer Sedillos . . . observed both left tires of . . . Defendant's vehicle cross over the center line[,]" and (2) "[the dash cam] video . . . did not show [Defendant's] vehicle crossing the center line." In our view, these are not necessarily contradictory findings. The testimony established that due to poor lighting and the distance between Officer Sedillos's patrol car and Defendant's vehicle, the dash cam video did not capture the center line at the point where Officer Sedillos testified that he saw Defendant swerve out of his lane. And Officer Sedillos testified that he clearly saw Defendant cross the center line and that his view was better than that shown on the dash cam. While the district court did not explicitly find that Defendant's tires crossed the center line, we assume it credited Officer Sedillos's testimony because it denied Defendant's motion to suppress. *See State v. Martinez*, 2018-NMSC-007, ¶¶ 15-18, 410 P.3d 186 (deferring to district court's implicit acceptance of the testifying officer's perceptions despite inconclusive dash cam video); *Zamora*, 2005-NMCA-039, ¶ 8 (stating that we will indulge in all reasonable presumptions in support of the district court's ruling when it does not make any findings of fact). We therefore defer to the district court's implicit acceptance of Officer Sedillos's testimony that Defendant crossed over the center line.

**{7}** We now turn to Defendant's argument that the stop was not supported by reasonable suspicion. Defendant argues that Officer Sedillos did not have reasonable suspicion to stop him because Defendant did not violate Section 66-7-317(A), as a matter of law, because "his conduct did not create an unsafe driving condition." Specifically, Defendant contends that his movements must unsafely impact nearby vehicles in order to violate Section 66-7-317(A). The State, in turn, argues that Section 66-7-317(A) does not contain a requirement that the motorist's lane departure affect other traffic. Alternatively, the State argues that Officer Sedillos made an objectively

reasonable mistake of law in believing that Defendant violated Section 66-7-317(A), despite the lack of vehicles in the immediate vicinity.

**{8}** Before we proceed with our analysis, we note that Defendant's argument requires us to clarify the elements of Section 66-7-317(A). While we recognize and agree with the special concurrence that this statute is in need of clarification, we do not believe that it is proper to do so in this case. First, well-established principles of statutory construction require that we must analyze a "statute's function within a comprehensive legislative scheme" and may not consider subsections "in a vacuum." *State v. Rivera*, 2004-NMSC-001, ¶ 13, 134 N.M. 768, 82 P.3d 939 (internal quotation marks and citation omitted); *see Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 14, 121 N.M. 764, 918 P.2d 350 ("[A]ll parts of a statute must be read together to ascertain legislative intent. We are to read the statute in its entirety and construe each part in connection with every other part to produce a harmonious whole." (citation omitted)). Our Supreme Court has recognized the dangers of attempting to interpret statutes by analyzing certain text in isolation:

> While . . . one part of the statute may appear absolutely clear and certain to the point of mathematical precision, lurking in another part of the enactment, or even in the same section, or in the history and background of the legislation, or in an apparent conflict between the statutory wording and the overall legislative intent, there may be one or more provisions giving rise to genuine uncertainty as to what the [L]egislature was trying to accomplish. In such a case, it is part of the essence of judicial responsibility to search for and effectuate the legislative intent— the purpose or object—underlying the statute.

*State ex rel. Helman v. Gallegos*, 1994-NMSC-023, ¶ 23, 117 N.M. 346, 871 P.2d 1352.

**{9}** Second, to the extent the statutory construction issue has been raised in this case, the record and the briefing before us is inadequate to permit appellate review. As our Supreme Court has also cautioned, "[c]ourts risk overlooking important facts or legal considerations when they take it upon themselves to raise, argue, and decide legal questions overlooked by the lawyers who tailored the case to fit within their legal theories." *N.M. Dep't of Human Servs. v. Tapia*, 1982-NMSC-033, ¶ 11, 97 N.M. 632, 642 P.2d 1091; *accord State v. Am. Fed'n of State, Cty., & Mun. Emps.*, 2012-NMCA-114, ¶ 35, 291 P.3d.

**{10}** Our review of New Mexico law reveals that no case has squarely addressed Defendant's argument that a motorist cannot violate Section 66-7-317(A) without affecting other nearby traffic. *See United States v. Vance*, 893 F.3d 763, 770 (10th Cir. 2018) (concluding that, after reviewing New Mexico case law, the defendant's assertions that "it would be unreasonable for any officer . . . to believe a lane change that did not actually result in a safety risk to surrounding traffic amounted to a violation of [Section] 66-7-317(A). . . . are, at best, subject to significant debate"). The language used in Section 66-7-317(A) is taken verbatim from Section 11-309(a) of the Uniform

Vehicle Code, which a majority of states have adopted. *Compare* § 66-7-317(A), *with* Nat'l Comm. on Unif. Traffic Laws & Ordinances, Uniform Vehicle Code § 11-309(a) (2000), http://iamtraffic.org/wp-content/uploads/2013/ 01/UVC2000.pdf. *See also United States v. Bassols*, 775 F. Supp. 2d 1293, 1299 n.3 (D.N.M. 2011) (stating that "every state in the Tenth Circuit and a majority of the states in the United States have identical statutory provisions"). However, "[a] review of other jurisdictions [confronting arguments similar to Defendant's] reveals more diversity in interpretation than one would expect for a uniform vehicle code provision." *United States v. Jones*, 501 F. Supp. 2d 1284, 1296 (D. Kan. 2007) (analyzing Kansas law identical to Section 66-7-317(A)); *see State v. Regis*, 32 A.3d 1109, 1115 (N.J. 2011) (collecting cases addressing similar arguments and stating that courts that have applied statutes identical to Section 66-7-317(A) "have reached varying conclusions"). Given the varying ways our sister states have interpreted laws with identical language, we are hesitant to interpret definitively Section 66-7-317(A) on such inadequate briefing, which fails to cite to a single out-of-state case. In any event, construction of the statute is unnecessary to resolution of Defendant's appeal as the matter here ultimately turns on the reasonableness of Officer Sedillos's understanding of the law.

**{11}** "A police officer can initiate an investigatory traffic stop without infringing the Fourth Amendment or Article II, Section 10 if the officer has a reasonable suspicion that the law is being or has been broken."[1] *Martinez*, 2018-NMSC-007, ¶ 10 (internal quotation marks and citation omitted). "[A]ppellate courts will find reasonable suspicion if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *State v. Dopslaf*, 2015-NMCA-098, ¶ 8, 356 P.3d 559 (internal quotation marks and citation omitted). "This includes reasonable suspicion that a traffic law has been violated." *State v. Siqueiros-Valenzuela*, 2017-NMCA-074, ¶ 11, 404 P.3d 782. A stop may be premised on an officer's mistake of law without negating reasonable suspicion so long as the officer's mistake was objectively reasonable. *Dopslaf*, 2015-NMCA-098, ¶¶ 10-11 (citing *Heien v. North Carolina*, 574 U.S. 54, ___, 135 S. Ct. 530, 539 (2014)).

**{12}** The question we confront then is whether it was objectively reasonable for Officer Sedillos to believe Defendant's lane departure, which did not in fact affect the safety of others, was a violation of Section 66-7-317(A). To answer this question, we look to the language of the statute and controlling case law. Section 66-7-317(A) provides,

---

[1] Besides generally citing Article II, Section 10, Defendant fails to develop any argument that our analysis should differ under our State Constitution. "Thus, we assume without deciding that both constitutions afford equal protection to individuals against unreasonable seizures in this context, and we analyze the constitutionality of the seizure under one uniform standard." *State v. Ochoa*, 2004-NMSC-023, ¶ 6, 135 N.M. 781, 93 P.3d 1286; *see State v. Yazzie*, 2016-NMSC-026, ¶ 38, 376 P.3d 858 ("Although we have interpreted Article II, Section 10 to provide broader protections against unreasonable search and seizure than the Fourth Amendment in some contexts, we have never interpreted the New Mexico Constitution to require more than a reasonable suspicion that the law is being or has been broken to conduct a temporary, investigatory traffic stop[.]" (citation omitted)).

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic . . . a vehicle shall be driven as nearly as practicable entirely within a single lane *and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety*[.]

(Emphasis added.) The plain language of the latter portion of Section 66-7-317(A) prohibits drivers from moving out of their lane of traffic unless they "first ascertain" that it is safe to do so. There is nothing in the statutory language that specifies the lane departure must in fact unsafely affect other traffic in order to constitute a violation, as Defendant contends.

{13}  Additionally, no published New Mexico appellate case has stated definitively that danger to another motorist is an element of the statute. Prior to 2014, only two published cases analyzed the language of Section 66-7-317(A). *See Archibeque v. Homrich*, 1975-NMSC-066, ¶¶ 15-16, 88 N.M. 527, 543 P.2d 820; *Aragon v. Speelman*, 1971-NMCA-161, ¶¶ 6-10, 83 N.M. 285, 491 P.2d 173. However, both *Archibeque* and *Aragon* dealt with Section 66-7-317(A)[2] in the civil context of negligence per se. *See Archibeque*, 1975-NMSC-066, ¶¶ 14-16; *Aragon*, 1971-NMCA-161, ¶¶ 6-10. Nor did either case conclusively hold that a motorist could not violate Section 66-7-317(A) unless his lane departure actually endangered another motorist. *See Archibeque*, 1975-NMSC-066, ¶¶ 3, 16 (holding that the district court properly refused to give a negligence per se instruction because "[t]he harm sought to be prevented by [Section 66-7-317(A)] apparently is head-on collisions or sideswiping the opposite moving traffic[, and i]t is doubtful that the statute could have been intended by the [L]egislature to apply to a situation such as this[,]" where the defendant crossed out of his lane and killed himself and his passenger in a single-vehicle accident without any eyewitnesses); *Aragon*, 1971-NMCA-161, ¶¶ 6-10 (holding that the plaintiff was not entitled to a negligence per se instruction based on a failure to maintain lane violation because "there [was] no evidence that the defendants' vehicle moved from one lane to another at anywhere close to where the accident occurred").

{14}  In 2014, we decided *State v. Salas*, 2014-NMCA-043, 321 P.3d 965, the first published case analyzing Section 66-7-317(A) in the criminal context. In that case, two officers were following the defendant when they observed his vehicle cross out of his lane one time and then make a sudden left turn from the far right lane without using his turn signal. *Salas*, 2014-NMCA-043, ¶ 2. The officers cited the defendant for violating Section 66-7-317(A) and arrested him for DWI. *Salas*, 2014-NMCA-043, ¶¶ 2-3. After the district court denied the defendant's motion to suppress, he appealed to this Court, arguing that "the officers did not have reasonable suspicion to stop him based on his driving conduct because no hazard or peril was created by his actions." *Id.* ¶¶ 8, 13 (internal quotation marks omitted). In rejecting this argument, we noted that, while there was no safety issue at the time, there were other cars generally on the road and that the officers testified about their concern for the safety of other motorists—including the

---

2 Both *Archibeque* and *Aragon* dealt with the predecessor to 66-7-317(A), which contained identical language. *Compare* NMSA 1953, § 64-18-16(A) (1941), *with* § 66-7-317(A).

officers themselves—if they permitted the defendant to continue to drive erratically. *Id.* ¶¶ 14-15. We also noted that "[a] reasonable inference could be drawn that [the d]efendant drove in a manner that would indicate that he was not concerned about possible vehicular travel coming from behind or northbound"—i.e., that the defendant failed to ascertain that his movements could be made with safety. *Id.* ¶ 15. Given this, we concluded that "[t]he officers had legitimate and reasonable suspicion that lane and illegal turn-related traffic offenses occurred." *Id.*

**{15}** Additionally, the *Salas* defendant argued that the stop was based on a mistake of law, which would have negated reasonable suspicion pre-*Dopslaf*. *Salas*, 2014-NMCA-043, ¶ 16; *see Dopslaf*, 2015-NMCA-098, ¶ 11 (noting that our case law that an officer cannot premise a stop on a reasonable mistake of law is no longer the appropriate inquiry under the Fourth Amendment in light of *Heien*). In rejecting the defendant's argument, the *Salas* Court noted that "any mistake could only have been one of fact, not law . . . [because a]ny possible mistake was only as to whether [the d]efendant 'first ascertained' whether his drifting and then turning could be made safely." *Salas*, 2014-NMCA-043, ¶ 16 (quoting Section 66-7-317(A)). As the State argues, these observations in *Salas* suggest that an officer may develop reasonable suspicion of a Section 66-7-317(A) violation if a motorist moves out of a lane in a manner indicating a failure to first ascertain the safety of the maneuver, whether or not the movement happens to endanger other motorists. *See Vance*, 893 F.3d at 772-73 ("The language of [Section] 66-7-317(A) supports the conclusion that actual disruption is not an element of the offense. The extant New Mexico case law does not call that conclusion into question. Indeed, the decision in *Salas* strongly supports that conclusion.").

**{16}** In support of his argument that Officer Sedillos made an unreasonable mistake of law, Defendant cites to *Siqueiros-Valenzuela*, where we held that "the plain language of Section 66-7-317(A)—including the 'as nearly as practicable' qualification—recognizes and contemplates circumstances under which a driver may momentarily leave his or her lane of travel without violating the statute."[3] *Siqueiros-Valenzuela*, 2017-NMCA-074, ¶ 18. *Siqueiros-Valenzuela*, however, was not decided until several months after Officer Sedillos pulled Defendant over and therefore does not bear on the reasonableness of Officer Sedillos's interpretation of Section 66-7-317(A) in this case.

**{17}** Given the language of the statute and our precedential case law, we conclude that it was objectively reasonable for Officer Sedillos to believe that Defendant violated Section 66-7-317(A) despite the fact that his conduct did not immediately endanger other motorists. *Cf. Dopslaf*, 2015-NMCA-098, ¶ 17 (stating that "[t]he lack of definitive guidance [in a statute] as to what constitutes [the prohibited portions of a roadway], in

---

3 Defendant also relies on *State v. James*, No. 33,020, mem. op. (N.M. Ct. App. Jan. 28, 2014) (non-precedential), an unpublished memorandum opinion by this Court construing Section 66-7-317. Because unpublished opinions have no controlling precedential value, we decline to consider them in determining the objective reasonableness of Officer Sedillos's mistake of law. *See* Rule 12-405(B) NMRA (rule governing non-precedential opinions); *Eastland Fin. Servs. v. Mendoza*, 2002-NMCA-035, ¶ 16, 132 N.M. 24, 43 P.3d 375 ("An unpublished opinion is written solely for the benefit of the parties to the action and has no controlling precedential value.").

combination with [the officer]'s observation[s] . . . is sufficient to make the stop, assuming it was a mistake of law, a reasonable one").

**CONCLUSION**

**{18}** For the foregoing reasons, we affirm the district court's order denying Defendant's motion to suppress.

**{19}  IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**I CONCUR:**

**JENNIFER L. ATTREP, Judge**

**IVES, Judge (specially concurring).**

**{20}** I agree with my esteemed colleagues that we should affirm. But I respectfully decline to join the majority opinion because I do not believe that the mistake of law doctrine applies to Defendant's appeal. I write separately to summarize my analysis along with my concern that overbroad application of this Fourth Amendment doctrine will unnecessarily subject people to infringements of their liberty and perpetuate confusion about the meaning of our criminal and traffic statutes.[4]

**{21}** The limited scope of the mistake of law doctrine was the only point on which all nine justices of the United States Supreme Court agreed in *Heien*. The Court explained that mistakes of law must be objectively reasonable. *Heien*, 574 U.S. at ___, 135 S. Ct. at 539-40. Thus, "the [mistake of law] inquiry is not as forgiving as the one employed in the [qualified immunity] context[,]" and "an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce." *Id.* at ___, 135 S. Ct. at 539-40. In a concurring opinion joined by Justice Ginsburg, Justice Kagan elaborated on this limitation, explaining that mistake of law only applies if a statute is "genuinely ambiguous." *Id.* at ___, 135 S. Ct. at 541 (Kagan, J., concurring). Dissenting, Justice Sotomayor rejected the doctrine entirely but concluded "that the set of reasonable mistakes of law ought to be narrowly circumscribed if they are to be countenanced at all[.]" *Id.* at ___, 135 S. Ct. at 547 (Sotomayor, J., dissenting). She also expressed "fear [that] the Court's unwillingness to sketch a fuller view of what makes a mistake of law reasonable only presage[d] the likely difficulty that courts [would] have [in] applying the Court's decision[.]" *Id.*

**{22}** Maybe Justice Sotomayor's fear has become reality in Defendant's appeal. My colleagues in the majority and I apparently disagree about how to interpret *Heien* and

---

4 Defendant does not ask us to consider whether an officer's mistake of law can justify a search under Article II, Section 10 of the New Mexico Constitution or, if it can, whether the state constitutional analysis is identical to the federal analysis.

*Dopslaf*, New Mexico's only precedential opinion explicitly applying *Heien*. I believe these precedents allow mistake of law to justify a governmental intrusion on liberty *only* when the statute at issue "is genuinely ambiguous[.]" *Heien*, 574 U.S. at ___, 135 S. Ct. at 541 (Kagan, J., concurring)); *Dopslaf*, 2015-NMCA-098, ¶ 17 (quoting Justice Kagan, parenthetically, for the proposition that mistake of law only applies to "genuinely ambiguous" statutes (internal quotation marks and citation omitted)); *see United States v. Stanbridge*, 813 F.3d 1032, 1037 (7th Cir. 2016) ("*Heien* does not support the proposition that a police officer acts in an objectively reasonable manner by misinterpreting an *unambiguous* statute."); *United States v. Alvarado-Zarza*, 782 F.3d 246, 249-50 (5th Cir. 2015) (recognizing that mistake of law does not apply to unambiguous statutes). The majority does not explicitly endorse or reject the genuine ambiguity requirement. But its rejection could be implicit. It seems to me that the majority relies on mistake of law even though Section 66-7-317(A) is not genuinely ambiguous with respect to the narrow question in Defendant's appeal: Does the pertinent part of the statute make unsafe impact on others an element of this traffic violation?

**{23}** The answer, as I see it, is no under the unambiguous language of the statute. Defendant relies on the part of Section 66-7-317(A) that states that a vehicle "shall not be moved from [the driver's] lane until the driver has first ascertained that such movement can be made with safety."[5] I agree with the majority that "[t]here is nothing in the statutory language that specifies the lane departure must in fact unsafely affect other traffic in order to constitute a violation[.]" Majority Op. ¶ 12. Had our Legislature intended to prohibit only lane departures that unsafely impact others, it would have done so.[6] The Legislature chose instead to prohibit a driver from failing to *ascertain* whether his or her departure could be made safely. A failure to ascertain safety is not equivalent to an actual impact on the safety of others. It is possible for a driver to fail to ascertain that a movement can be safely made, even if the driver's lane departure does not end up actually having an unsafe impact, or any impact at all, on other people.[7] The majority also finds no support for Defendant's interpretation in New Mexico precedent. Again, I agree. But I believe that that should be the end of our inquiry. Because neither the plain meaning of Section 66-7-317(A) nor any binding precedent supports Defendant's interpretation, I would affirm based solely on a rejection of Defendant's reading of the

---

5 The remainder of Section 66-7-317(A) requires that "[a] vehicle . . . be driven as nearly as practicable entirely within a single lane[.]" Because neither party relies on this part of the statute, I see no need to discuss it.

6 In fact, the Legislature has chosen to impose similar a requirement elsewhere in the Motor Vehicle Code. *See* NMSA 1978, § 66-7-325(A) (1978) (prohibiting motorists from "turn[ing] any vehicle without giving an appropriate signal . . . in the event any other traffic may be affected by such movement"); *see also State v. Hubble*, 2009-NMSC-014, ¶¶ 9-14, 146 N.M. 70, 206 P.3d 579 (interpreting Section 66-7-325(A) to require use of turn signals when there is a "reasonable possibility" that other traffic might be affected).

7 I can imagine many examples. Some involve failures to ascertain that impact other people but not *unsafely*. For example, a driver anticipates an incautious driver's lane change and gently applies the brakes to prevent the incautious driver's movement from having an *unsafe* impact. Other hypotheticals involve lane departures that are unsafe only for the driver. A driver fails to look before moving into a lane marked off by orange and white construction barrels. But, fortunately, the construction site is inactive, and no other motorists are in the area, so the driver has not unsafely impacted *others*.

pertinent part of the statute, rather than the reasonableness of the officer's "mistake" of law.[8]

**{24}** Judicial development of mistake of law doctrine will meaningfully impact Fourth Amendment freedoms. The doctrine weakens the protections of liberty afforded by the probable cause and reasonable suspicion tests. It does so by allowing detentions and arrests based on *incorrect* readings of statutes as long as those readings are objectively reasonable. The consequences of expanding what is now a modest doctrine so that it encompasses unambiguous statutes could be profound. Adherence to the genuine ambiguity requirement would ensure that the probable cause and reasonable suspicion tests apply with full rigor, except in those rare cases that cannot be resolved without "hard interpretative work[.]" *Dopslaf*, 2015-NMCA-098, ¶ 17 (internal quotation marks and citation omitted); *see State v. Goodman*, 2017-NMCA-010, ¶¶ 1, 7, 389 P.3d 311 (holding that it was an unreasonable mistake of law for an officer to interpret an ordinance that made it unlawful to "obstruct the free use of [any] public way" as prohibiting a "five- to fifteen-second delay in proceeding from a red light turned green"). Courts should not undermine the probable cause and reasonable suspicion tests by turning to mistake of law whenever they are called upon to interpret statutory language that, while perhaps no model of clarity, is not truly ambiguous.

**{25}** Another problematic consequence of overusing mistake of law doctrine warrants brief discussion here. When an appellate court relies on mistake of law to decide a case without saying what the pertinent statute means, the court perpetuates, rather than resolves, the confusion that the court believes justifies resort to the doctrine in the first place.[9] *See Heien*, 574 U.S. at ___, 135 S. Ct. at 544 (Sotomayor, J., dissenting) (explaining that "permitting mistakes of law to justify seizures has the perverse effect of preventing or delaying the clarification of the law"). Mistake of law covers a statute like an opaque shroud, obscuring our view of the statute's meaning. What the Legislature intended is no longer our focus. What matters in a mistake of law analysis is not whether a particular interpretation of a statute is right or wrong, but whether that interpretation is objectively reasonable. Such analysis does not help anyone understand the meaning of a statute. *Cf. Miller v. Fenton*, 474 U.S. 104, 114 (1985) (recognizing "appellate court[s'] primary function as an expositor of law").

**{26}** I think this is a significant problem. The police need to understand the meanings of the statutes they are enforcing when they make potentially life-changing—and sometimes deadly—decisions about whether to detain and arrest people. *Cf. State v. Attaway*, 1994-NMSC-011, ¶ 10, 117 N.M. 141, 870 P.2d 103 (recognizing that it is "the duty of appellate courts" in search and seizure cases "to shape the parameters of police

---

8 Fortunately, in Defendant's appeal, the mistake of law analysis and what I view as a correct interpretation of the statute produce the same result, affirmance. Of greater concern are cases in which courts use mistake of law to justify intrusions based on *incorrect* interpretations of *unambiguous* statutes.

9 For instance, if the majority's opinion were precedential, its holding would be definitive, not as to the meaning of Section 66-7-317(A), but as to the reasonableness of the officer's interpretation of that statute. And, based on the majority's conclusion that that interpretation is reasonable, actually determining the statute's meaning would continue to be unnecessary in future appeals that raise the same issue.

conduct by placing the constitutional requirement of reasonableness in factual context"). Clarity is also critical for New Mexicans, who need guidance about what our criminal and traffic statutes prohibit and what they permit. And clarity is critical for judges, who need to know precisely what a statute means, not which possible meanings are within some objectively reasonable range. Fidelity to the genuine ambiguity requirement would minimize the confusion mistake of law generates. If we respect this boundary around the doctrine, we will decide more cases based on the actual meanings of statutes, providing much-needed clarity to the police, the public, and the courts.[10]

**{27}** The majority opinion is, of course, not a precedential interpretation of *Heien* or *Dopslaf*. *See* Rule 12-405(A) (stating that memorandum opinions are not precedent). For that we must wait. In the meantime, maybe the two opinions in Defendant's case will be of some use to lawyers who are left to wrangle over Fourth Amendment mistake of law doctrine and judges who are tasked with applying it.

**ZACHARY A. IVES, Judge**

---

[10] I agree with the majority that Defendant's appeal does not present a good opportunity to interpret Section 66-7-317(A) as a whole. However, I think we can and should resolve Defendant's appeal by answering the narrow question of interpretation his appeal does present, leaving other questions for future appeals.